Susan RO ANE, Barbara Ann Brown, Christine Elgin, Maurice M. Kovash, Edward J. Cassilagio, Stephen Negoesco, Jr., for themselves and on behalf of a class composed of those teachers employed by the San Francisco Unified School District who became members of the State Teachers' Retirement System as of July 1, 1972, who make contributions to Social Security and who have initiated their administrative remedies with respect to their claims that their Social Security coverage ceased as of July 1, 1972 and that their contributions since July 1, 1972 should be refunded, Plaintiffs,

v.

F. David MATHEWS, in his official capacity as Secretary of Health, Education and Welfare, William E. Simon, in his official capacity as Secretary of the Treasury, Board of Administration of the Public Employees' Retirement System of the State of California, Robert F. Carlson, Malvern W. Aust, Arthur J. Wiedel, Prescott Reed, Bartlett T. Grimes, Carl Verhoye, Roy Bell, and Frank M. Woods, in their official capacities as members of said Board of Administration, Carl J. Blechinger, in his official capacity as Executive Officer of the Public Employees' Retirement System, San Francisco Unified School District, Board of Education of the San Francisco Unified School District, Lee S. Dolson, Samuel Martinez, Lucille Abrahamson, Z. L. Goospy, Eugene S. Hopp, John A. Kidder, and Thomas A. Reed, in their official capacities as members of said Board of Education, Robert F. Alioto, in his official capacity as Superintendent of Schools of the San Francisco Unified School District, Defendants.

No. C–76–1960–CBR.

United States District Court,
N. D. California.

May 16, 1977.

Patmont & Myers, F. Bradford Niebling, San Francisco, Cal., for plaintiffs.

James L. Browning, Jr., U. S. Atty., John M. Youngquist, Asst. U. S. Atty., San Francisco, Cal., for defendant David F. Mathews.

Thomas M. O'Connor, City Atty., Donald J. Garibaldi, Deputy City Atty., San Francisco, Cal., for defendant City and County of San Francisco.

Evelle J. Younger, Atty. Gen. of the State of Cal., Gordon Zane, Deputy Atty. Gen., San Francisco, Cal., for defendants of State of Cal.

## MEMORANDUM OF OPINION

RENFREW, District Judge.

Plaintiffs, teachers employed by the San Francisco Unified School District, brought this action pursuant to Section 205(g) of the Social Security Act ("Act"), as amended (42 U.S.C. § 405(g)), to obtain judicial review of a final decision of the Secretary of Health, Education and Welfare ("Secretary"), denying their respective claims for revision of their earnings records.[1] They have joined as defendants the Secretary and the Secretary of the Treasury ("federal defendants"), the Board of Administration of the Public Employees' Retirement System of the State of California and its members and executive officer ("state defendants"), and the San Francisco Unified School District, its Board of Education and the individual Board members, and its Superintendent of Schools ("local defendants").

On August 8, 1974, plaintiffs simultaneously filed requests for correction of their earnings records and for reconsideration, alleging that they ceased to be covered by social security as of July 1, 1972. On Octo-

---

1. Section 205(c)(2) of the Act, as amended (42 U.S.C. § 405(c)(2)(A)), requires the Secretary to maintain earnings records for each individual who has coverage under Title II of the Act and, upon request, to inform the individual of the amount of wages and self-employee income reflected by such records. Section 205(c)(4) and (c)(5)(B) (42 U.S.C. § 405(c)(4) and (c)(5)(B)) allows an individual to request a deletion of wages erroneously included in his earnings record, and § 205(c)(6) (42 U.S.C. § 405(c)(6)) requires the Secretary to provide written notice of his decision to the individual. If the Secretary refuses to change the records, the individual is entitled to an opportunity for a hearing under § 205(c)(7) (42 U.S.C. § 405(c)(7)) and to judicial review in accordance with § 205(g) under § 205(c)(8) (42 U.S.C. § 405(c)(8)).

ber 31, 1974, the Social Security Administration issued combined initial and reconsidered determinations denying each request on the grounds that plaintiffs remained covered by social security. On November 22, 1974, the plaintiffs through their attorney filed a request for hearing, waiving their rights to appear and give evidence and requesting a decision on the evidence on file. The administrative law judge considered the case *de novo* and, on February 19, 1975, found that the plaintiffs' social security coverage ("coverage") continued on and after July 1, 1972. The administrative law judge's decision became the final decision of the Secretary when the Appeals Council approved it in June, 1975. Upon plaintiffs' request, the Secretary extended the time in which plaintiffs might file a civil action to obtain judicial review of the decision to September 15, 1976.

Seeking declaratory, injunctive, and monetary relief, plaintiffs filed this action on September 13, 1976,[2] and a motion for summary judgment on October 28, 1976, which the local defendants opposed in a memorandum filed December 21, 1976. The federal defendants filed a motion to dismiss or, in the alternative, for summary judgment on January 11, 1977, which the plaintiffs opposed in a memorandum filed January 14, 1977. The motions were argued to the Court at a hearing held on January 19, 1977.

The material facts of this controversy are undisputed. Each of the plaintiffs was formerly a member of Group B of the San Francisco City and County Employees' Retirement System ("SFRS"), a retirement group which has enjoyed coverage since October, 1959. Effective July 1, 1972, each of the plaintiffs elected to terminate his or her membership in the SFRS and to become a member of the State Teacher's Retirement System ("STRS") as allowed by California Education Code § 14116.4. Members of the STRS do not, as such, enjoy coverage. Since the plaintiffs elected STRS membership, each has continued his or her employment with the defendant school district in the same capacity. In addition, since the election, the local defendants have continued to make social security deductions from plaintiffs' salaries that are forwarded to the State which, in turn, pays them to the Secretary of the Treasury. Thus, while plaintiffs are no longer members of SFRS, the coverage which they received by virtue of their former membership continues.

## I. PROPER PARTIES DEFENDANT

Plaintiffs rely exclusively upon § 205(g) of the Act as the jurisdictional basis for this action.[3] Section 205(g)[4] al-

---

**2.** The history of this controversy in the federal courts extends beyond the instant action. Four of the six named plaintiffs were parties to an earlier action which raised the same issue. Senior District Judge Albert C. Wollenberg dismissed the complaint for plaintiffs' failure to exhaust administrative remedies. Order Dismissing Action, No. C–73–1183–ACW (filed March 28, 1974). The Court of Appeals affirmed the dismissal. *RoAne v. Mathews*, 538 F.2d 852 (9 Cir. 1976).

In a companion case to the earlier *RoAne* action, a class of San Francisco taxpayers challenged the matching employer contributions to Social Security which the School District has made on behalf of certain employees in the same position as plaintiffs in the instant action. Adopting a previous ruling by the Commissioner of the Social Security Administration, Social Security Ruling 74–5, see *infra* at 1096, the District Court granted summary judgment for defendants. Order Granting Summary Judgment for Defendants, No. C–74–274–ACW (filed June 11, 1974). The Court of Appeals for this Circuit vacated this order and remanded

the case for dismissal for appellants' failure to exhaust administrative remedies. *Baker v. Mathews*, 538 F.2d 855 (9 Cir. 1976).

**3.** Although plaintiffs challenge the constitutionality of the continued deduction and payment of funds for social security coverage from their wages, they did not and, in light of the Supreme Court's decision in *Weinberger v. Salfi*, 422 U.S. 749, 756–762, 95 S.Ct. 2457, 45 L.Ed.2d 522 (1975), cannot assert federal question jurisdiction. Section 205(h) states, in relevant part:

"No findings of fact or decision of the Secretary shall be reviewed by any person, tribunal, or governmental agency except as herein provided. No action against the United States, the Secretary, or any officer or employee thereof shall be brought under section 41 of Title 28 to recover on any claim arising under this subchapter."

In *Weinberger v. Salfi, supra*, the Supreme Court held that § 405(h) precludes the resort to

**4.** See note 4 on page 1093.

lows, and dictates the procedures for, review of a final decision of the Secretary in federal district court. As plaintiffs have exhausted their administrative remedies and otherwise complied with § 205(g), it is clear that their suit properly lies against the Secretary.

However, the language of § 205(g) does not indicate that Congress intended to authorize suit against any other person under this subsection. Certainly the Secretary of the Treasury, sued in his official capacity, is not a proper party to this action. Section 205(g)'s consent to suit against the Secretary constitutes a limited waiver of sovereign immunity and must be strictly construed. *E.g., Zeller v. Folsom,* 150 F.Supp. 615, 617 (N.D.N.Y.1956). Nor does it appear that the state and local officials are proper defendants. Plaintiffs have cit-

ed no case authority, and the Court can discern neither law nor logic, which supports joining these parties in an action seeking review of a decision of a federal administrative agency to which they were not and could not have been parties. Courts have repeatedly held, although in different factual contexts than the instant case presents, that the Secretary is the only proper defendant in a § 205(g) action. *See, e.g., Sandridge v. Folsom,* 200 F.Supp. 25 (M.D. Tenn.1959) (plaintiff sued former rather than present Secretary); *Hall v. Department of Health, Education and Welfare,* 199 F.Supp. 833 (S.D.Tex.1960) (plaintiff sued agency rather than Secretary). Therefore, the Court will dismiss all defendants except the Secretary for lack of jurisdiction.[5]

---

federal question jurisdiction for actions challenging the denial of claimed benefits which arise under both the Act and the Constitution. The court reasoned that such an action does arise under Title II for purposes of § 205(h) inasmuch as plaintiffs seek benefits under the Act and the Act "provides both the standing and the substantive basis for the presentation of [the] constitutional contentions." 422 U.S. at 760–761, 95 S.Ct. at 2464.

4. Section 205(g) states:

"Any individual, after any final decision of the Secretary made after a hearing to which he was a party, irrespective of the amount in controversy, may obtain a review of such decision by a civil action commenced within sixty days after the mailing to him of notice of such decision or within such further time as the Secretary may allow. Such action shall be brought in the district court of the United States for the judicial district in which the plaintiff resides or has his principal place of business, or, if he does not reside or have his principal place of business within any such judicial district, in the United States District Court for the District of Columbia. As part of his answer the Secretary shall file a certified copy of the transcript of the record including the evidence upon which the findings and decision complained of are based. The court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Secretary, with or without remanding the cause for a rehearing. The findings of the Secretary as to any fact, if supported by substantial evidence, shall be conclusive, and where a claim has been denied by the Secretary or a decision is rendered under subsection (b) of this section

which is adverse to an individual who was a party to the hearing before the Secretary, because of failure of the claimant or such individual to submit proof in conformity with any regulation prescribed under subsection (a) of this section, the court shall review only the question of conformity with such regulations and the validity of such regulations. The court shall, on motion of the Secretary made before he files his answer, remand the case to the Secretary for further action by the Secretary, and may, at any time, on good cause shown, order additional evidence to be taken before the Secretary, and the Secretary shall, after the case is remanded, and after hearing such additional evidence if so ordered, modify or affirm his findings of fact or its decision, or both, and shall file with the court any such additional and modified findings of fact and decision, and a transcript of the additional record and testimony upon which his action in modifying or affirming was based. Such additional or modified findings of fact and decision shall be reviewable only to the extent provided for review of the original findings of fact and decision. The judgment of the court shall be final except that it shall be subject to review in the same manner as a judgment in other civil actions. Any action instituted in accordance with this subsection shall survive notwithstanding any change in the person occupying the office of Secretary or any vacancy in such office.

5. The Court appreciates the plaintiffs' desire to consolidate into a single action all parties involved in the activities of which they complain. However, the Act and regulations promulgated thereunder do not look toward such an adjudi-

## II. DURATION OF COVERAGE UNDER § 218 OF THE ACT

The pivotal issue in this litigation is whether § 218 of the Act, as amended (42 U.S.C. § 418), authorizes the continuing coverage of plaintiffs, despite their transfer to a state retirement system not covered by social security.

### A. Background

As originally enacted in 1935, § 218 of the Act expressly excluded service performed in the employ of a state or political subdivision from coverage due to the constitutional limitations on federal taxation of the states. See Social Security Act of 1935, ch. 531, Title II, § 218. See also Secretary of Health, Education and Welfare v. Snell, 416 F.2d 840, 841 (5 Cir. 1969). In 1950, Congress amended § 218 to allow coverage for state and local employees not covered by state retirement systems through voluntary agreements between a state and the Federal Security Administrator, the predecessor of the Secretary. Social Security Amendments of 1950, ch. 809, Title I, § 106, 64 Stat. 514 (codified at 42 U.S.C. § 418, as amended). These amendments enable a state to agree to coverage for services performed by individuals as employees of a state or of any political subdivision thereof. 42 U.S.C. § 418(a)(1). The unit of coverage is the "coverage group." [6] Although the state may in its discretion designate one or more coverage groups subject to an agreement, 42 U.S.C. § 418(c)(1), it must agree to coverage for all services performed by individuals as members of such a group. 42 U.S.C. § 418(c)(2).[7]

Since that time, a series of amendments has further broadened the Act's potential coverage of state and local employees. A 1954 amendment to § 218 permits state and local employees covered by state retirement plans to acquire coverage under a federal-state agreement after an affirmative referendum vote of the employees involved. Social Security Amendments of 1954, ch. 1206, Title I, § 101, h(1)–(8), 68 Stat. 1055, 1059 (codified at 42 U.S.C. § 418(c), (d), (f), (m), (n), as amended). A 1956 amendment allows certain states to divide their retirement systems into two parts—one composed of positions of members desiring coverage and the other of those opposed to coverage, to treat each part as a separate retirement system for purposes of extending coverage, and to agree to coverage for only the part which favors it. The ability to divide the state system in this way is conditioned upon the state's agreeing that the positions of individuals who join the state system after coverage is extended will thereafter be included in the retirement system coverage group. Social Security Amendments of 1956, ch. 836, Title I, § 104(e), 70 Stat. 823, 825, 826 (codified at 42 U.S.C. § 418(d)(6)(C), as amended). A 1957 amendment added California to the group of states able to exercise this option. Social Security Amendments of 1957, Pub.L. 85–227, § 1, 71 Stat. 512 (codified at 42 U.S.C. § 418(d)(6)(C), as amended).

The extension of coverage to California state and local employees parallels these statutory developments. On March 9, 1951,

---

cation. In general, they promote the individual's dealing with the states, 20 C.F.R. § 404.-1266(a) (matters of undercollection and overcollection of employee contributions for § 218 coverage to be settled between state and employee), and thereafter the states' dealing with the federal government, 20 C.F.R. § 404.1270–404.1277 (procedure through which state may obtain review by Secretary and, thereafter, administrative and judicial review of Secretary's decision with respect to § 218 assessments).

6. 42 U.S.C. § 418(b)(5) defines "coverage group" as follows:
   " * * * (A) employees of the State other than those engaged in performing service in

connection with a proprietary function; (B) employees of a political subdivision of a State other than those engaged in performing service in connection with a proprietary function; (C) employees of a State engaged in performing service in connection with a single proprietary function; or (D) employees of a political subdivision of a State engaged in performing services in connection with a single proprietary function."

7. Certain services, not at issue here, are expressly excluded under the Act. See 42 U.S.C. § 418(c)(2).

the State of California ("State") entered into an agreement with the Federal Security Administrator to provide coverage for certain state and local employees. As § 218 required at that time, this agreement expressly excluded service performed by employees in positions covered by state retirement plans. Following the 1954, 1956, and 1957 amendments to the Act, the State and the Secretary executed as of October 16, 1959, Modification No. 296 to California State Social Security Agreement ("Modification No. 296"). Modification No. 296 extended coverage to, among others, individuals as employees of the San Francisco Unified School District as members of a retirement system coverage group designated as Group B of the SFRS. Modification No. 296 states that Group B "is composed of members of such retirement system who desire Old-Age, Survivors, and Disability Insurance coverage."

Because they elected coverage at the time of the division of the system, plaintiffs Cassilagio and Negoesco were members of Group B from its inception. Because they commenced employment with the defendant school district and became members of the SFRS after the division of the retirement system, the remaining plaintiffs automatically became members of Group B.

In 1972, the State enacted a statute which provided that all individuals who commenced employment on or after July 1, 1972, with the defendant school district in positions requiring membership in the SFRS would be members instead of the STRS, a retirement group not covered for social security purposes. California Education Code § 14116.1 (West 1975). By a statute enacted at the same time, the State required each credentialed member of the SFRS to make by February 15, 1973, an irrevocable election, effective July 1, 1972, to be covered exclusively by either the SFRS or the STRS. California Education Code § 14116.4 (West 1975). As each of the plaintiffs elected STRS membership during the appropriate time period, none is presently a member of SFRS.

B.  *Analysis*

The administrative law judge determined that plaintiffs' coverage continues despite their transfer from the SFRS to the STRS. He based this determination upon the dual finding that (1) plaintiffs continued to meet the definition of membership in a retirement system coverage group provided by § 218(d)(4)(A) and (B) of the Act, and (2) coverage of their services as members of such a coverage group has not been terminated in the manner prescribed by § 218(g) of the Act.

Section 218(d)(3) of the Act (42 U.S.C. § 418(d)(3)) generally provides that a state may agree to coverage for "service performed by employees in positions covered by a retirement system (including positions specified in paragraph (4) of this subsection * * *) * * *." Section 218(d)(4) (42 U.S.C. § 418(d)(4)) states:

"For the purposes of subsection (c) of this section, the following employees shall be deemed to be a separate coverage group—

"(A) All employees in positions which were covered by the same retirement system on the date the agreement was made applicable to such system (other than employees to whose services the agreement already applied on such date);

"(B) all employees in positions which became covered by such system at any time after such date; and

"(C) all employees in positions which were covered by such system at any time before such date and to whose services the insurance system established by this subchapter has not been extended before such date because the positions were covered by such retirement system (including employees to whose services the agreement was not applicable on such date because such services were excluded pursuant to subsection (c)(3)(B) of this section)."

The administrative judge determined that plaintiffs Cassilagio and Negoesco fall within § 218(d)(4)(A) and the remaining plaintiffs within § 218(d)(4)(B). Because all of the plaintiffs continue to serve as em-

ployees in the same political entity—the San Francisco Unified School District—in positions which were covered as Group B of the SFRS, he found that the subsequent termination of their SFRS membership is irrelevant under the Act. According to his interpretation,

" * * * [M]embership in the social security coverage group depends on whether the employee in question serves in a position which was covered by the retirement system on, after, or in some cases before, the date social security coverage was extended to the particular retirement system. No provision of the Federal law makes membership in the retirement system coverage group, once established, depend in any way on the continued coverage of the position by the retirement system or the employee's continued membership in the retirement system or the employee's membership in another retirement system." Administrative Law Judge's Decision, dated February 19, 1975, at 5.

Due to plaintiffs' continued employment in the same position in the same political entity, the administrative law judge reasoned that their coverage could be terminated only pursuant to § 218(g). Section 218(g) states, in relevant part:

"(1) Upon giving at least two years' advance notice in writing to the Secretary, a State may terminate, effective at the end of a calendar quarter specified in the notice, its agreement with the Secretary either—

"(A) in its entirety, but only if the agreement has been in effect from its effective date for not less than five years prior to the receipt of such notice; or

"(B) with respect to any coverage group designated by the State, but only if the agreement has been in effect with respect to such coverage group for not less than five years prior to the receipt of such notice.

\* \* \* \* \* \*

"(3) If any agreement entered into under this section is terminated in its entirety, the Secretary and the State may not again enter into an agreement pursuant to this section. If any such agreement is terminated with respect to any coverage group, the Secretary and the State may not thereafter modify such agreement so as to again make the agreement applicable with respect to such coverage group." [8]

Inasmuch as the State did not undertake to terminate Group B coverage in accordance with this subsection, the administrative law judge found that § 218(g) mandates continued coverage of plaintiffs.

In reaching this conclusion, the administrative law judge relied upon the determination of the Commissioner of the Social Security Administration ("Commissioner") in Social Security Ruling 74–5 (January, 1974) ("SSR 74–5"). SSR 74–5 concerned the claim of the State of Connecticut that the continued coverage of certain of its employees was improper. The affected employees had been transferred from a covered retirement system created pursuant to § 218 to a newly created retirement system not covered by the federal-state agreement. As do the plaintiffs in the instant action, the State of Connecticut contended that coverage of these employees ceased upon their transfer to the new system. In rejecting this argument, the Commissioner determined:

"Subsection 218(d)(4)(A) of the act, in part, clearly states that for the purposes of providing coverage a deemed separate coverage group includes employees in positions which were covered by the same retirement system '. . . on the date the agreement was made applicable to such system . . . .' Nowhere in section 218 does it indicate that once such coverage is effectuated its continuity depends on whether the positions continue to be covered by the retirement system after the date the agreement was made applicable to such system. \* \* \*

---

8. Section 218(g)(2) details the procedure by which the Secretary may terminate a § 218 agreement due to some failure by the State to perform under the agreement.

Rather, coverage of the coverage group continues until it is ended in accordance with the provisions of subsection 218(g) relating to termination of coverage. If section 218 coverage of a retirement system coverage group may be ended at any time merely by removing retirement system coverage, then the provisions of subsection 218(g) relating to termination of coverage might well be rendered meaningless with respect to retirement system coverage groups."

█ Because the administrative law judge's finding is a conclusion of law, it is fully reviewable by this Court.[9] *Celebrezze v. Wifstad*, 314 F.2d 208, 210 (8 Cir. 1963); *Foster v. Celebrezze*, 313 F.2d 604, 606 (8 Cir. 1963); *Conley v. Ribicoff*, 294 F.2d 190, 194 (9 Cir. 1961). However, in exercising this broad power of review, the Court must afford great weight to the interpretation of the relevant portions of § 218 by the Commissioner in SSR 74–5. "[T]he construction of a statute by those charged with its execution should be followed unless there are compelling indications that it is wrong * * *." *Red Lion Broadcasting Co. v. FCC*, 395 U.S. 367, 381, 89 S.Ct. 1794, 1802, 23 L.Ed.2d 371 (1969). "To sustain the [Commissioner's interpretation of the statute], [the Court] need not find that [his] construction is the only reasonable one or even that it is the result [the Court] would have reached had the question arisen in the first instance in judicial proceedings." *Un-*

employment Comm'n v. Aragon, 329 U.S. 143, 153, 67 S.Ct. 245, 250, 91 L.Ed. 136 (1946). *See Udall v. Tallman*, 380 U.S. 1, 16–17, 85 S.Ct. 792, 13 L.Ed.2d 616 (1965); *Arizona St. Dept. of Pub. W. v. Dept. of H.E.W.*, 449 F.2d 456, 468 (9 Cir. 1971), *cert. denied*, 405 U.S. 919, 92 S.Ct. 945, 30 L.Ed.2d 789 (1972).[10] Considering both the language of the relevant subsections and the social policies which underlie the Act, the Court finds the Commissioner's interpretation, and thus the derivative interpretation of the administrative law judge, eminently reasonable.

Section 218(d)(3) generally authorizes coverage for "service performed by employees in positions covered by a retirement system (including positions specified in paragraph (4) of this subsection * * *) * * *." Plaintiffs contend that because the quoted, non-parenthetical language of this subsection does not expressly authorize coverage of service in positions *formerly* covered by a retirement system, their continued coverage cannot stem from their prior or SFRS membership. Although they do not dispute that they fall within the language of § 218(d)(4), they do not believe that fact dispositive. Instead, they assert that the parenthetical reference to § 218(d)(4) cannot reasonably be interpreted to expand or amplify the basic grant of authority in § 218(d)(3), because the statute does not state that the language of

**9.** The federal defendants assert that "[t]he only issue before the Court in this action is whether the final decision of the Secretary of HEW is supported by substantial evidence." Federal Defendants' Memorandum of Law in Support of Motion to Dismiss Action and/or for Summary Judgment, filed January 11, 1977, at 11. However, the language of § 205(g) of the Act, as amended (42 U.S.C. § 405(g)), expressly limits the "substantial evidence" test to "[t]he findings of the Secretary as to any fact * *."

**10.** Having analyzed *Zuber v. Allen*, 396 U.S. 168, 192–194, 90 S.Ct. 314, 24 L.Ed.2d 345 (1969), *Red Lion Broadcasting Co. v. FCC*, 395 U.S. 367, 380–381, 89 S.Ct. 1794, 23 L.Ed.2d 371 (1969), and *Udall v. Tallman*, 380 U.S. 1, at 16–17, 91 S.Ct. 136 (1965), plaintiffs accurately enumerate circumstances which lead courts to afford even greater deference to administrative

interpretations—agency participation in drafting a statute, agency interpretation contemporaneous to a statute's enactment, longstanding and consistent agency interpretation, agency interpretation ratified by or unaltered by Congress after sufficient time for Congressional examination and action, and agency interpretation of a regulation as opposed to a statute. Memorandum of Points and Authorities [in Support of Plaintiffs' Motion for Summary Judgment], filed October 28, 1976, at 27–28. However, contrary to plaintiffs' assertion, the absence of one or all of these special circumstances does not undermine the principle that courts ought defer to such agency interpretations. The "venerable principle", *Red Lion Broadcasting Co. v. FCC, supra*, 395 U.S. at 381, 89 S.Ct. 1794, remains intact; only the degree of deference appropriate varies.

§ 218(d)(4) "defines" the phrase "positions covered by a retirement system" in § 218(d)(3). They suggest that § 218(d)(4) functions merely to clarify the classes of persons who become members of a retirement system coverage group upon and after its creation. Therefore, they claim that the administrative judge's and Commissioner's reliance upon the language of § 218(d)(4)(A) and (B) as grounds for plaintiffs' continued coverage is erroneous.

Plaintiffs' argument is not persuasive. Given § 218(d)(3)'s explicit reference to § 218(d)(4), the subsections cannot be read and interpreted independently. The plain language of § 218(d)(3) indicates that the phrase "positions covered by a retirement system" *includes*, and thus is at least broad enough to encompass, those positions delineated in § 218(d)(4). The Court agrees that the phrase would have a different meaning had Congress chosen to substitute the language "as defined by" for "including positions specified in" § 218(d)(3): The use of definitional language would restrict the meaning of the phrase to those positions specifically enumerated in the following section, rather than allowing some interpretative flexibility. But that distinction has no bearing on the case at bar. It might have been reasonable to construe the grant of authority in § 218(d)(3) to refer only to employees who are in positions presently covered by the relevant retirement system in the absence of an explicit statutory reference to the broader language of § 218(d)(4). However, because the language of § 218(d)(3) expressly incorporates the positions listed in § 218(d)(4), plaintiffs' proffered construction is untenable.

The logic of the Commissioner's and the administrative law judge's interpretation is reinforced by consideration of the legislative history of Section 218 and the social policies which underlie the Act. In authorizing the states to agree to coverage for certain groups of their employees, Congress severely restricted their ability to withdraw their consent to coverage. Section 218 not only limits voluntary termination to agreements which have been operative for seven years, but also penalizes the withdrawal by barring future coverage under § 218 for the withdrawing state's employees, in whole or in part.[11] The legislative history of § 218 indicates that Congress designed these restrictions "to prevent in-and-out movements disadvantageous to the financing of the [social security] program" in order "to safeguard the interest of all parties concerned." S.R. 1669, 81st Cong., 2d Sess. 14 (1950). *See* S.R. 1669, *supra*, at 115; H.R. 1300, 81st Cong., 1st Sess. 11, 103 (1949).

Plaintiffs argue that because they do not seek to terminate a coverage group itself, but only their membership in such a group, § 218(g) is inapplicable. It is true that, when one of the conditions for membership in a coverage group fails, *e. g.*, upon an employee's death, retirement, or transfer to the employ of a different political entity, an employee does lose § 218 coverage, without implicating § 218(g). However, in a case such as this, where employees continue to meet the membership criteria enumerated in § 218(d)(3) and (4), the distinction which plaintiffs seek to draw is unsound.

■ Plaintiffs continue to hold the same jobs for the same employer as they did before July 1, 1972. The single change in their circumstances relevant to this action is their election to discontinue membership in the SFRS and to join the STRS. If such a change in circumstances results in termination of coverage, it must follow that a state could *de facto* terminate a coverage agreement by summarily transferring all employees from a covered retirement system to a newly created, non-covered retirement system. The only difference between the instant case and the hypothetical case is that in the former the state makes transfer possible without eliminating the coverage group and in the latter the transfer is mandatory and the coverage group dissolved. Either way, were the law as plaintiffs wish it were, the state would be able to renege upon a coverage agreement without conforming to or suffering consequences under

11. *See* text of § 218(g)(1) and (3), *supra*, at 10–11.

§ 218(g). This result would imperil the stability of social security funds and the interests of social security participants through means which Congress clearly intended to forestall in enacting § 218(g).

### III. *CONSTITUTIONAL CHALLENGES*

In addition to their claim that the Secretary's interpretation of § 218 is erroneous, plaintiffs contend that their continued coverage is unconstitutional for two reasons. First, they assert that the continued collection of their social security contributions constitutes a taking without due process of law:

> "Plaintiffs contend that there is no authority for the continued collection of these contributions since they ceased to be covered by Social Security as of July 1, 1972. If so, it follows automatically that the continued collection of these contributions has resulted in the taking of plaintiffs' property without due process of law." Memorandum of Points and Authorities [in Support of Plaintiffs' Motion for Summary Judgment], filed October 28, 1976, at 25–26.

Because the state rather than the federal government actually collects plaintiffs' contributions, and because the plaintiffs did not raise the argument in the administrative proceedings it is not at all clear that the challenge is properly asserted in this action for review of the Secretary's determination. However, it is clear that because the Court affirms the Secretary's decision that the plaintiffs' continued coverage is authorized by the Act, this constitutional challenge must fail.

Second, plaintiffs allege that, if the Secretary's construction of § 218 is proper, the statute denies them equal protection of the laws in contravention of the Fifth Amendment. They claim that there is no rational basis for requiring continued coverage of some STRS members (plaintiffs and those similarly situated who originally received coverage as members of the SFRS) while denying coverage to other STRS members (school district employees who commenced employment after July 1, 1972).

The statutory classification imposed by the agency's interpretation of § 218 is consistent with the due process guarantee of the Fifth Amendment if the classification is " 'rationally based and free from invidious discrimination.' " *Richardson v. Belcher,* 404 U.S. 78, 81, 92 S.Ct. 254, 257, 30 L.Ed.2d 231 (1971), *quoting Dandridge v. Williams,* 397 U.S. 471, 487, 90 S.Ct. 1153, 25 L.Ed.2d 491 (1970). Although this standard "is not a toothless one," *Mathews v. Lucas,* 427 U.S. 495, 510, 96 S.Ct. 2755, 49 L.Ed.2d 651 (1976), the statutory classification is entitled to a strong presumption of constitutionality. *Mathews v. de Castro,* 429 U.S. 181, 185, 97 S.Ct. 431, 50 L.Ed.2d 389 (1976). Because the classification in question not only is facially rational but also comports with the social policy which underlies § 218, the Court finds the classification constitutionally permissible.

Clearly, the basis for differentiating between the two classes of school district employees is that, although plaintiffs have an established relationship with the SFRS coverage group, other members have no such connection to that coverage group. Plaintiffs appear to argue that this distinction is insufficient to support a finding of reasonableness, inasmuch as—but for the enactment of California Education Code § 14116.1—those persons who commenced employment with the school district after July 1, 1974, would have become members of Group B of SFRS:

> "Plaintiffs question how any rational distinction can be drawn between persons who occupy precisely the same positions with respect to eligibility for Social Security coverage: both plaintiffs and the new employees occupy positions which were once covered by SFRS and by Social Security through Group B of SFRS, but none of them is presently a member of SFRS." Memorandum of Points and Authorities [in Support of Plaintiffs' Motion for Summary Judgment], filed October 28, 1976, at 24.

This formulation of the question assumes the answer which plaintiffs seek. In fact,

the two classes of employees do not occupy "precisely the same positions." The plaintiffs, on one hand, either chose to become or automatically became members of Group B and thus have occupied positions covered by Social Security for some time. The class of new employees, on the other hand, have never been members of the SFRS and their positions, which must be ascertained by reference to them and not to some former occupant,[12] were never included in Group B.

This factual difference has meaningful legislative implications, given Congress's avowed and legitimate interest in preventing unrestricted movement in and out of the Social Security program to the program's financial detriment. Once a state employee comes within the ambit of coverage, the federal government has a cognizable interest in preventing his attrition from the system. The statutory distinction between the plaintiffs and other STRS members is consistent with that interest.

Plaintiffs suggest that this Congressional purpose is not worthy of serious attention, inasmuch as Congress neglected to foreclose a state's ability to circumvent its agreement and § 218(g) by methods other than the termination and replacement of a covered retirement group with a non-covered group.[13] However, the Court is not empowered to ignore valid, declared congressional intent simply because the legislative scheme might have been better designed. The statutory classification of which plaintiffs complain is rationally related to the achievement of legitimate legislative goals, and thus is not so arbitrary as to violate the Due Process Clause of the Fifth Amendment. *See Richardson v. Belcher*, 404 U.S. 78, 84, 92 S.Ct. 254, 30 L.Ed.2d 231 (1971).

Accordingly, IT IS HEREBY ORDERED that defendants William E. Simon, the Board of Administration of the Public Employees' Retirement System of the State of California, Robert F. Carlson, Malvern W. Aust, Arthur J. Wiedel, Prescott Reed, Bartlett T. Grimes, Carl Verhoye, Roy Bell, Frank M. Woods, Carl J. Blechinger, the San Francisco Unified School District, the Board of Education of the San Francisco Unified School District, Lee S. Dolson, Samuel Martinez, Lucille Abrahamson, Z. L. Goosby (erroneously named as Z. L. Goospy), Eugene S. Hopp, John A. Kidder, Thomas A. Reed, and Robert F. Alioto are dismissed from this action.

IT IS HEREBY FURTHER ORDERED that defendant Mathews' motion for summary judgment is granted and plaintiffs' motion for summary judgment is denied with the parties to bear their respective costs.

IT IS HEREBY FURTHER ORDERED that counsel for defendants shall promptly prepare an appropriate form of judgment, obtain approval of counsel for plaintiffs as to form, and submit to the Court for execution.

---

12. Section 218(d)(4) refers to positions rather than to employees. However, in the case of a retirement system divided pursuant to § 218(d)(6)(C), one can determine whether a particular position is covered by social security only by reference to the employee then occupying the position, and not to an employee who formerly held the job. This is so because the retirement system coverage group includes only those positions occupied by individuals who either chose coverage upon the state system's division or subsequently became members of the state system. If an employee meets neither of these criteria, his position is not covered by social security.

13. For example, as the administrative law judge acknowledges in his findings in the instant case, a state can remove its employees from coverage under a § 218 agreement without suffering consequences under § 218(g) by reorganizing the employer from one political entity to another, *i. e.*, from a local to a state agency or from one local agency to another. Assuming that the former is an employer included in an operative § 218 agreement and the latter is not, upon the reorganization, the employee group would no longer serve in positions in the retirement system to which the agreement was made applicable and their coverage would therefore cease.