Sylvan Earl OSTROFF, Plaintiff,

v.

The STATE OF FLORIDA, DEPART-MENT OF HEALTH & REHABILITA-TIVE SERVICES, et al., and Mr. David Pingree, Secretary of H.R.S., Defendants.

No. 81–128–Civ–Oc.

United States District Court,
M.D. Florida,
Ocala Division.

Jan. 12, 1983.

As Amended Jan. 31, 1983.

Sylvan Earl Ostroff, pro se.

Chester G. Senf, Asst. Gen. Counsel, Dept. of Health & Rehabilitative Services, Jim Smith, Atty. Gen., State of Fla., Tallahassee, Fla., for defendants.

## ORDER OF DISMISSAL

**CHARLES R. SCOTT, Senior District Judge.**

■ This matter is before the Court on the first and second affirmative defenses of the defendants' answer to the plaintiff's *pro se* complaint, which the Court shall treat as a motion to dismiss for lack of subject matter jurisdiction, pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure; and the defendants' motion for summary judgment as to the jurisdictional defenses.[1] For reasons set forth below, the Court agrees with the defendants (hereinafter "the State") that it has no jurisdiction over this cause, and accordingly the plaintiff's complaint must be dismissed. The Court's resolution of this matter makes it unnecessary to consider numerous motions filed by the plaintiff and various additional defenses raised by the defendants.[2]

The plaintiff, Sylvan Earl Ostroff, brought this action against "The State of Florida, H.R.S., et al." seeking damages for the wrongful termination of his Social Security benefits over a 13-month period, between June 1, 1979 and July 14, 1980. According to the complaint, Ostroff began receiving Social Security disability benefits in October 1975 due to rheumatoid arthritis and degenerative spinal injuries connected with his military service. Prior to that time, Ostroff had been employed as an architectural draftsman. In March 1979, the defendant Florida Department of Health & Rehabilitative Services ("H.R.S."), acting through its Office of Disability Determinations ("O.D.D.") on behalf of the federal Social Security Administration ("S.S.A."),[3]

---

1. Also pending are several motions filed by the plaintiff (motion for judgment or hearing, filed June 6, 1981; motion for judgment, filed September 28, 1981; motion to proceed and demand for jury trial, filed October 23, 1981; motion for hearing and demand for jury trial, filed January 20, 1982; motion to proceed, filed February 26, 1982; motion for judgment, filed April 26, 1982; motion for judgment in default, filed August 30, 1982; and motion for judgment, filed November 10, 1982) and various additional defenses raised by the State. The Court is obligated to give initial consideration to the jurisdictional questions, since if it must dismiss for lack of subject matter jurisdiction, all other matters become moot and need not be determined. *Menchaca v. Chrysler Credit Corp.,* 613 F.2d 507, *reh'g denied,* 622 F.2d 1043 (5th Cir.), *cert. denied,* 449 U.S. 953, 101 S.Ct. 358, 66 L.Ed.2d 217 (1980); *Bell v. Hood,* 327 U.S. 678, 66 S.Ct. 773, 90 L.Ed. 939 (1946).

2. Among the defenses asserted by the State is that David Pingree, the Secretary of the defendant Florida Department of Health & Rehabilitative Services ("H.R.S."), although listed as a defendant in subsequent pleadings and in the summons served on counsel for H.R.S., was not a named defendant in the complaint and therefore was not served "except as an agent for [H.R.S.]" (Defendant's motion for summary judgment at p. 2). For purposes of the jurisdictional discussion below, the Court will assume *arguendo* that Mr. Pingree is a party defendant in this action and was properly served.

3. Pursuant to an agreement in accordance with 42 U.S.C. § 421, the Secretary of the United States Department of Health & Human Services ("Secretary") has authorized the Florida Department of Health & Rehabilitative Services, through its Office of Disability Determinations, to make initial determinations as to eligibility for Social Security disability benefits. *See Epps v. Harris,* 624 F.2d 1267, 1268–69 (5th Cir.1980).

Judge Friendly, in *Ellis v. Blum,* 643 F.2d 68 (2d Cir.1981), has outlined the general administrative scheme, in effect during the period of this case, for disability determinations under such an agreement:

> In a majority of cases a state agency ... is directed [by the Secretary] periodically to assess a beneficiary's continued eligibility for benefits. If the agency's tentative assessment after investigation is that the beneficiary has ceased to be disabled, the beneficiary must be so informed by a pre-termination notice, which also advises the beneficiary that he or she has at least ten days to submit additional evidence supporting a claim of continuing disability. At the expiration of this period, the state agency makes a formal determination which is then reviewed by the [Social Security Administration]. If the SSA agrees with the state agency, it notifies the beneficiary in writing of the termination and of the opportunity for de novo reconsideration by the state agency. Various other avenues also exist for administrative and judicial review of an adverse decision, but benefits are discontinued effective two months after the month in which the disability is found to have ceased.

643 F.2d at 70–71. *See also Adams v. Califano,* 474 F.Supp. 974, 975–76 (D.Md.1979), *aff'd sub nom, Adams v. Harris,* 643 F.2d 995, 996–97 (4th Cir.1981). Although Congress extensively revised the language of § 421 in 1980 (Pub.L.

reevaluated Ostroff's eligibility for benefits and concluded that he was no longer disabled. Consequently, on June 1, 1979, the S.S.A. terminated Ostroff's disability benefits. On July 14, 1980, however, Ostroff's benefits were reinstated retroactively as a result of a ruling by Social Security Administrative Law Judge Robert L. Osteen, on May 30, 1980, that Ostroff's disability and entitlement to benefits continued. Ostroff claims that H.R.S.'s erroneous determination of his noneligibility, and its failure to consider certain evidence which Ostroff submitted to show that he in fact was still disabled, forced Ostroff to live "in a state of abject deprivation" during the 13-month period when his benefits were cut off. Ostroff's complaint asks for compensatory damages of $50,000 and punitive damages of $100,000.

 In determining whether the Court has subject matter jurisdiction to hear a cause, the Court must read the plaintiff's *pro se* allegations in a liberal fashion, holding the complaint to less stringent standards than formal pleadings drafted by lawyers. *Miller v. Stanmore,* 636 F.2d 986, 988 (5th Cir.1981); *see Haines v. Kerner,* 404 U.S. 519, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972). Furthermore, a complaint need not state the precise grounds upon which the court's jurisdiction is based, so long as the

grounds are evident from the facts set forth in the complaint. *Cf. Continental Casualty Co. v. Canadian Universal Insurance Co.,* 605 F.2d 1340 (5th Cir.1979), *cert. denied* 445 U.S. 929, 100 S.Ct. 1317, 63 L.Ed.2d 762 (1980).

Ostroff asserts in his complaint that the Court has jurisdiction under § 205(g) of Title II of the Social Security Act, codified at 42 U.S.C. § 405(g). The State argues convincingly that if Ostroff's claim for damages is predicated solely upon alleged violations of the Social Security Act by H.R.S., the Court lacks subject matter jurisdiction.

 On the one hand, the United States Supreme Court has established that the Social Security Act is not a statute securing "equal rights" or "civil rights" within the meaning of 28 U.S.C. § 1343(3) or (4), and thus a mere violation of the Social Security Act will not support jurisdiction under either provision. *Chapman v. Houston Welfare Rights Organization,* 441 U.S. 600, 621–23, 99 S.Ct. 1905, 1917, 60 L.Ed.2d 508 (1979).

 On the other hand, the Social Security Act does not itself confer a private cause of action. It is true that the provision invoked by the plaintiff, 42 U.S.C. § 405(g),[4] affords an individual an avenue

---

96–265, Title III §§ 304(a)–(f), 311(a), 94 Stat. 453–456, 460), the basic administrative scheme described in *Ellis* was retained. Current regulations are set forth at 20 C.F.R. § 404.1 *et seq.* (1982).

4. 42 U.S.C. § 405(g) states:

Any individual, after any final decision of the Secretary made after a hearing to which he was a party, irrespective of the amount in controversy, may obtain a review of such decision by a civil action commenced within 60 days after the mailing to him of notice of such decision or within such further time as the Secretary may allow. Such action shall be brought in the district court of the United States for the judicial district in which the plaintiff resides or has his principal place of business, or, if he does not reside or have his principal place of business within any such judicial district, in the United States District Court for the District of Columbia. As part of his answer the Secretary shall file a certified copy of the transcript of the record including the evidence upon which the findings

and decision complained of are based. The court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Secretary, with or without remanding the cause for a rehearing. The findings of the Secretary as to any fact, if supported by substantial evidence, shall be conclusive, and where a claim has been denied by the Secretary or a decision is rendered upon subsection (b) of this section which is adverse to any individual who was a party to the hearing before the Secretary, because of failure of the claimant or such individual to submit proof in conformity with any regulation prescribed under subsection (a) of this section, the court shall review only the question of conformity with such regulations and the validity of such regulations. The court may, on motion of the Secretary made for good cause shown before he filed his answer, remand the case to the Secretary for further action by the Secretary, and it may at any time order additional evidence to

by which he may challenge a ruling by the Secretary of the Department of Health & Human Services ("H.H.S.") that he is not eligible for Social Security benefits. However, this is not what the plaintiff seeks in the instant action, and even if he were and were to prevail in the district court, the most he would be entitled to in "damages" is back payment of those benefits which were wrongfully withheld. 42 U.S.C. § 405(i). Here, the Secretary has already ruled in Ostroff's favor, reinstating his benefits retroactively,[5] but Ostroff now seeks further vindication by suing for consequential and punitive damages. Section 405(g) does not contemplate such an action and affords no such relief.[6]

■ Furthermore, § 405(g) only authorizes suits against the Secretary of H.H.S.;[7] no other agency or official of any government—federal, state or local—is a proper party defendant. *See Ro-Ane v. Mathews,* 476 F.Supp. 1089, 1093 (M.D.Cal.1977), aff'd 604 F.2d 37 (9th Cir.1979).

■ Moreover, 42 U.S.C. § 405(h) prohibits any non-§ 405(g) action against the United States, the Secretary, or any officer or employee thereof from being brought under 28 U.S.C. § 1331 or § 1346 to recover on any claim arising under Title II of the Social Security Act. *See Weinberger v. Salfi,* 422 U.S. 749, 95 S.Ct. 2457, 45 L.Ed.2d 522 (1975); *Mathews v. Eldridge,* 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976). Although Ostroff has brought this action against various state defendants, at the time of the events in question 42 U.S.C. § 421(a) provided that any disability determination made by a state agency pursuant to an agreement with the Secretary "shall be the determination of the Secretary" for

be taken before the Secretary, but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding; and the Secretary shall, after the case is remanded, and after hearing such additional evidence if so ordered, modify or affirm his findings of fact or its decision, or both, and shall file with the court any such additional and modified findings of fact and decision, and a transcript of the additional record and testimony upon which his action in modifying or affirming was based. Such additional or modified findings of fact and decision shall be reviewable only to the extent provided for review of the original findings of fact and decision. The judgment of the court shall be final except that it shall be subject to review in the same manner as a judgment in other civil actions. Any action instituted in accordance with this subsection shall survive notwithstanding any change in the person occupying the office of Secretary or any vacancy in such office.

5. A letter to the plaintiff from the Office of Disability Operations of the SSA, dated January 20, 1981 (a copy of which is contained in the plaintiff's Social Security disability file), indicates that Ostroff received $5,885.80 in back benefits for the period of June 1979 through June 1980 with regular monthly payment resuming thereafter.

6. Prior to filing this lawsuit, Ostroff tried to argue his claim against H.R.S. before Social

Security Administrative Law Judge William G. Roylance, under 42 U.S.C. § 405(b). Judge Roylance, in an order of May 28, 1981, indicated that he had no jurisdiction or authority under the Social Security Act to hear such a complaint, and accordingly dismissed Ostroff's request for hearing. Ostroff then filed the instant action in this Court, evidently under the impression that he was appealing Judge Roylance's May 28, 1981 order pursuant to 42 U.S.C. § 405(g). However, Judge Roylance's order was not a decision on the merits, but a dismissal for lack of subject matter jurisdiction. Consequently, if this Court has any jurisdiction under § 405(g), it is merely to review whether Judge Roylance properly found that he lacked jurisdiction. Although this matter has not been argued by the parties, it is quite evident that § 405(b) no more authorizes the Secretary to hear a private claim for damages against a state agency than does § 405(g) authorize this Court to hear such a claim. As Judge Roylance indicated in his order:

The provisions of the law cited do not provide for the Secretary to make any determination for payment of benefits or funds other than in accordance with Title II of the Social Security Act.... The claimant has already had a hearing and received a favorable decision regarding his claim for benefits under Title II of the Social Security Act.

7. Throughout the Social Security Act the term "Secretary" refers to the Secretary of the United States Department of Health & Human Services. 42 U.S.C. § 301.

purposes of Title II.[8] Hence, Ostroff's claim against the state defendants is merely a disguised dispute with the Secretary and is barred by § 405(h). *Ellis v. Blum,* 643 F.2d 68, 76 (2d Cir.1981).[9]

Finally, the Court notes that even if the Social Security Act did provide a basis of jurisdiction for this cause, the Eleventh Amendment, discussed below, would preclude any relief in the form of money damages. *See Edelman v. Jordan,* 415 U.S. 651, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974); *Houston Welfare Rights Org., Inc. v. Vowell,* 555 F.2d 1219, 1227 (5th Cir.1977), *aff'd sub nom., Chapman v. Houston Welfare Rights Org., supra.*

■ Because jurisdiction unquestionably does not lie if Ostroff's claim is based on the Social Security Act alone, the state suggests that the Court assume the plaintiff is alleging a Fourteenth Amendment violation as a basis of jurisdiction and 42 U.S.C. § 1983 as a basis of relief. The defendants, however, although a state agency and a state official, were not acting under color of state law, but were acting under federal authority. Hence, any Civil Rights claim Ostroff might have against the defendants cannot be brought under § 1983, but must be brought directly under the Due Process Clause of the Fifth Amendment, pursuant to the doctrine of *Bivens v. Six Unknown Federal Narcotics Agents,* 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971). *Ellis v. Blum,* 643 F.2d at 83–84. In any event, courts have, for the most part, applied § 1983 law to *Bivens*-type cases.[10] *Rodriguez v. Ritchey,* 539 F.2d 394, 399 (5th Cir.1976), *modified upon reh'g en banc,* 556 F.2d 1185 (1977), *cert. denied,* 434 U.S. 1047, 98 S.Ct. 894, 54 L.Ed.2d 799 (1978).

■ It is by no means evident from the complaint, however, that Ostroff is alleging a constitutional violation. Although Ostroff does assert, in later court filings, that his "Civil Rights" were violated, he there refers to substantive "rights" such as the right to subsistence, lodging and medical care. (*See e.g.,* "Rebuttal", filed March 29, 1982, at p. 3; "Motion for Hearing and Demand for Jury Trial", filed June 9, 1982, at p. 2; "Rebuttal and Argument in Support", filed September 18, 1982, at p. 3–6.) These are not Constitutional rights. To the extent that they are granted to disability beneficiaries under Title II of the Social Security Act, they are purely statutory entitlements. *See Harris v. McRae,* 448

---

**8.** 42 U.S.C. § 421, as revised under the 1980 amendment, no longer contains this language. However, 20 C.F.R. § 404.1615(f) (1982) provides:

> The state agency will not be responsible for defending in court any determination made, or any procedure for making determinations, under these regulations.

**9.** Although the Second Circuit, in *Ellis v. Blum,* allowed the plaintiffs in that case to bring a § 1331 claim for injunctive relief against various New York State defendants, the claim did not relate to a disability determination by the state agency, which the court acknowledged would be barred under § 405(h), but rather to the termination notice procedures employed by the state agency, which allegedly violated, *inter alia,* the notice procedures authorized by the Secretary. 643 F.2d at 76 n. 8. Of course, *Ellis* is also distinguished from the case *sub judice* in that Ostroff seeks money damages rather than prospective relief.

The *Bivens*-type action for emotional distress damages allowed against the state defendants in *Ellis* is discussed *infra.*

**10.** 42 U.S.C. § 1983 has been held to encompass claims against defendants acting under color of state law based on purely statutory violations of federal law, even where the federal statute in question does not secure equal or civil rights. *Maine v. Thiboutot,* 448 U.S. 1, 4–8, 100 S.Ct. 2502, 2504–06, 65 L.Ed.2d 555 (1980); *see also Maher v. Gagne,* 448 U.S. 122, 128–29, 100 S.Ct. 2570, 2574, 65 L.Ed.2d 653 (1980). This holding in *Thiboutot,* however, was derived from the phrase "and laws" in § 1983, and thus cannot logically be extended to *Bivens*-type actions, inasmuch as the *Bivens* doctrine was derived exclusively from the Due Process Clause of the Fifth Amendment. Furthermore, a *Thiboutot*-type § 1983 action for Social Security Act violations can be brought in federal court only pursuant to 28 U.S.C. § 1331. *Maine v. Thiboutot,* 448 U.S. at 8 n. 6, 100 S.Ct. at 2506 n. 6 (distinguishing *Chapman v. Houston Welfare Rights Org., supra* ). Consequently, even postulating a *Bivens/Thiboutot* -type action against defendants acting under color of federal law based solely upon federal statutory violations, such an action would be foreclosed to Title II claimants by 42 U.S.C. § 405(h), discussed *supra.*

U.S. 297, 314–18, 100 S.Ct. 2671, 2686, 65 L.Ed.2d 784 (1980); *Dandridge v. Williams,* 397 U.S. 471, 484–86, 90 S.Ct. 1153, 1161, 25 L.Ed.2d 491 (1970). Furthermore, *Chapman v. Houston Welfare Rights Org., supra,* specifically held that Social Security entitlements are not "civil rights". The clear inference is that the mere deprivation of Social Security benefits will not support a *Bivens*-type action.

It appears to the Court that the only possible constitutional claim the plaintiff might have is that the defendants deprived him of procedural due process.[11] Although the Court, after thoroughly review-

ing Mr. Ostroff's disability file, believes that his chances of proving such a claim are minimal at best,[12] the Court will give him the benefit of the doubt for jurisdictional purposes.

Nonetheless, the State correctly points out that even on this basis, the Court cannot entertain Ostroff's suit for money damages against the defendants, due to the State's sovereign immunity under the Eleventh Amendment to the United States Constitution.[13] It is firmly established that the Eleventh Amendment immunizes unconsenting states from private suits in federal

---

11. However, even granting a *Bivens* claim based on denial of procedural due process, and leaving aside the State's other defenses, the Court could not accept Ostroff's measure of damages. Punitive damages in a civil rights suit may not be awarded unless the court specifically finds that a defendant acted with malicious intention to deprive the plaintiff of his rights or to do him injury. *Carey v. Piphus,* 435 U.S. 247, 257 n. 11, 98 S.Ct. 1042, 1049 n. 11, 55 L.Ed.2d 252 (1978). Ostroff has not alleged this, and in fact has admitted that if the Secretary of H.R.S. (the only person named as a defendant) violated his rights, it was unknowingly. ("Rebuttal", filed March 29, 1982, at p. 2). Furthermore, it would seem that the State of Florida and H.R.S. are immune from liability for punitive damages in a civil rights action under the Supreme Court's reasoning in *City of Newport v. Facts Concerts, Inc.,* 453 U.S. 247, 101 S.Ct. 2748, 69 L.Ed.2d 616 (1981) (holding that a municipality may not be sued for punitive damages under § 1983). As to Ostroff's request for $50,000 compensatory damages, Ostroff gives no explanation of how he arrived at this figure. In any event, the damages Ostroff seeks appear to be for injuries resulting from the denial of his benefits. Such damages would seem to be foreclosed under § 405(h) (*see Ellis v. Blum, supra; Mathews v. Eldridge, supra; Weinberger v. Salfi, supra* ) and the doctrine of *Chapman v. Houston Welfare Rights Org., supra.* It appears that the only damages which Ostroff might be allowed are for mental pain and suffering flowing from the denial of due process itself. *Ellis v. Blum,* 643 F.2d at 83–84; *Carey v. Piphus, supra.* Ostroff has not alleged such damages, but the Court will proceed on the assumption that he would if given the opportunity to amend.

12. Ostroff's Social Security disability file reveals, if anything, that his case was accorded full and thorough consideration both in the initial evaluation and reconsideration by the state O.D.D. and upon review and reevaluation

by the S.S.A. The O.D.D. had before it recent medical evidence which provided a substantial competent basis for its conclusion that Mr. Ostroff was not disabled within the meaning of Title II. There is no indication that H.R.S. failed to consider any relevant piece of information before it. Obviously, the mere fact that the Administrative Law Judge ultimately reversed H.R.S.'s conclusion does not show that H.R.S. deprived Ostroff of procedural due process.

13. Although some authority holds that the immunity created by the Eleventh Amendment is not jurisdictional, *see e.g., Centraal Stikstof Verkoopkantoor, N.V. v. Alabama State Docks Department,* 415 F.2d 452 (5th Cir.1969), the Supreme Court has held that it "partakes the nature of a jurisdictional bar" sufficient that it may be raised for the first time on appeal. *Edelman v. Jordan,* 415 U.S. at 678, 94 S.Ct. at 1363; *Ford Motor Co. v. Department of Treasury,* 323 U.S. 459, 466–67, 65 S.Ct. 347, 351, 89 L.Ed. 389 (1945). The Court feels it is appropriate to consider the state's Eleventh Amendment defense under a Rule 12(b)(1) motion. The only material difference between an Eleventh Amendment defense and other Rule 12(b)(1) defenses is that a defense of lack of subject matter jurisdiction generally cannot be waived by the parties to a suit, whereas a state may choose to waive its Eleventh Amendment sovereign immunity. *See generally* Tribe, *Intergovernmental Immunities in Litigation, Taxation, and Regulation: Separation of Powers Issues in Controversies About Federalism,* 89 Harv.L.Rev. 682, 684–85 (1976). But where a state fully invokes its Eleventh Amendment guarantees, as Florida has here (see discussion *infra* ), this difference vanishes. In any event, whether Eleventh Amendment immunity is considered a jurisdictional defense or some other sort of defense (*e.g.,* failure to state a claim upon which relief can be granted), the Court's analysis would be substantially the same.

courts for retrospective money damages, whether brought by their own citizens or by citizens of other states. *Hans v. Louisiana,* 134 U.S. 1, 10 S.Ct. 504, 33 L.Ed. 842 (1890); *Edelman v. Jordan,* 415 U.S. 651, 662–63, 94 S.Ct. 1347, 1355, 39 L.Ed.2d 662 (1974). A state's immunity under the Eleventh Amendment also extends to statewide agencies. *See Florida Department of Health & Rehabilitative Services v. Florida Nursing Home Association,* 450 U.S. 147, 101 S.Ct. 1032, 67 L.Ed.2d 132 (1981).

▮ The fact that the plaintiff in this case is arguably suing for civil rights violations does not deprive the State of its Eleventh Amendment defense. It is true that, under certain constitutional provisions, Congress has the power to authorize private suits for damages which would otherwise be barred by the Eleventh Amendment. Oné such provision is Section 5 of the Fourteenth Amendment, which empowers Congress to enforce the provisions of the Fourteenth Amendment through appropriate legislation. Whether Congress would have such enforcement powers under the Fifth Amendment is unclear. *See generally* Tribe, *Intergovernmental Immunities in Litigation, Taxation, and Regulation: Separation of Powers Issues in Controversies About Federalism,* 89 Harv.L.Rev. 682 (1976). Nevertheless, even under the Fourteenth Amendment, congressional authorization of private suits for damages has been found only where explicitly and clearly indicated on the face of an enabling statute. *See Fitzpatrick v. Bitzer,* 427 U.S. 445, 96 S.Ct. 2666, 49 L.Ed.2d 614 (1976) (involving 42 U.S.C. § 2000e *et seq.* ); *Hutto v. Finney,* 437 U.S. 678, 98 S.Ct. 2565, 57 L.Ed.2d 522 (1978) (involving 42 U.S.C. § 1988). By contrast, the statute which authorizes private Fourteenth Amendment civil rights suits, 42 U.S.C. § 1983, does not explicitly authorize damages suits against states, and accordingly the Supreme Court has ruled that § 1983 does not override the states' immunity guaranteed by the Elev-

enth Amendment. *Alabama v. Pugh,* 438 U.S. 781, 98 S.Ct. 3057, 56 L.Ed.2d 1114 (1978); *Quern v. Jordan,* 440 U.S. 332, 99 S.Ct. 1139, 59 L.Ed.2d 358 (1979); *accord Familias Unidas v. Briscoe,* 619 F.2d 391 (5th Cir.1980); *Bogard v. Cook,* 586 F.2d 399 (5th Cir.1978). Since there is no congressional enabling act whatever for *Bivens*-type claims, the Court must conclude *a fortiori* that any such claim available to Ostroff against the State is also subject to Eleventh Amendment immunity.

▮ Of course, a state may choose to waive Eleventh Amendment sovereign immunity.[14] However, *Edelman v. Jordan* instructs that no waiver should be found unless clearly stated. 415 U.S. at 673, 94 S.Ct. at 1360; *Florida Department of Health & Rehabilitative Services v. Florida Nursing Home Association,* 450 U.S. at 150, 101 S.Ct. at 1034; *Williams v. Bennett,* 689 F.2d 1370, 1377 (11th Cir.1982). Article X, Section 13 of the Florida Constitution provides that state sovereign immunity may be waived only by general law. This Court's review of the Florida Statutes reveals no such waiver with respect to civil rights liability. Florida has enacted a limited waiver of sovereign immunity for "actions . . . in tort," at § 768.28, Fla.Stat. While § 768.28 presumably would authorize an action for damages against the State brought in federal court under some traditional theory of tort liability, assuming the plaintiff could otherwise assert federal jurisdiction, *see Kiesel v. State of Florida, Department of Natural Resources,* 479 F.2d 1261 (5th Cir.1973) (tort suit allowed in admiralty under predecessor to § 768.28), nothing in the statute indicates that the term "tort action" was meant to encompass civil rights claims. There is obviously no necessary correlation between a tort cause of action and a civil rights cause of action; and even in cases where the two theories overlap, lawyers generally assert them as separate, distinct counts. Furthermore, in a related provision autho-

---

**14.** Since there is no Eleventh Amendment discussion with respect to the plaintiff's *Bivens* claim for emotional damages against the State of New York in *Ellis v. Blum, supra,* the Court assumes that New York either has waived its immunity or failed to raise the defense in that case.

rizing governmental payment of judgments against public employees, the Florida Legislature has expressly drawn a distinction, in the maximum damages payable for satisfaction of a judgment, between tort actions arising under § 768.28 and civil rights actions arising under federal statutes such as 42 U.S.C. § 1983. § 111.071(1)(a), Fla.Stat. Consequently, the Court is unable to conclude that § 768.28 was intended to authorize civil rights damages suits to be brought in federal court against the State of Florida.[15]

 Finally, state officers and employees are also immunized from suits for retrospective damages by the Eleventh Amendment where such damages would be paid from public funds in the state treasury. *Edelman v. Jordan,* 415 U.S. at 665, 94 S.Ct. at 1357; *Williams v. Bennett,* 689 F.2d at 1378–79; *American Civil Liberties Union v. Finch,* 638 F.2d 1336 (5th Cir.1978). Because the plaintiff concedes that he is suing the Secretary of H.R.S., Mr. David Pingree, vicariously in his official capacity (see "Rubuttal", filed March 29, 1982 at p. 2), the Eleventh Amendment immunity enjoyed by the State of Florida and H.R.S. clearly extends to Mr. Pingree as well.[16]

The Court concludes that it is without jurisdiction and the complaint must be dismissed. Accordingly, it is

ORDERED and ADJUDGED:

1. The defendants' motion to dismiss for lack of subject matter jurisdiction is hereby granted.

**15.** Nor are the Florida Statutes specifically dealing with H.R.S. helpful to Ostroff. Section 402.34, Florida Stat., which establishes H.R.S. as a corporate body, gives H.R.S. the power to sue or be sued in actions in contract but not in tort. Nevertheless, even if Ostroff's action were in some sense construed as a contract dispute, the Supreme Court has held that § 402.34 does not constitute a waiver of Eleventh Amendment sovereign immunity. *Florida Department of Health & Rehabilitative Service v. Florida Nursing Home Association, supra.*

**16.** Yet an additional barrier to Ostroff's claim is posed by the fact that *respondeat superior* generally does not apply in § 1983 and consequently in *Bivens*-type actions. *Ellis v. Blum,*

2. The above-styled cause is hereby dismissed with prejudice.

3. Each party shall bear its own costs.

643 F.2d at 85; *Monell v. Department of Social Services of the City of New York,* 436 U.S. 658, 691–95, 98 S.Ct. 2018, 2036, 56 L.Ed.2d 611 (1978); *Baskin v. Parker,* 602 F.2d 1205 (5th Cir.1979) (on rehearing). Hence, all other defenses aside, Mr. Pingree could not be held liable for damages unless he in some way personally contributed to Ostroff's alleged denial of due process. *See Ellis v. Blum, supra.* Similarly, H.R.S. could not be held liable unless the alleged denial were brought about through the execution of an H.R.S. policy or custom. *Monell v. Department of Social Services of the City of New York, supra.* There is no indication of such and Ostroff makes no such allegations.