643 F.2d 68
 Catherine ELLIS, individually and on behalf of all others
similarly situated, Plaintiffs-Appellants,
v.
Barbara BLUM, individually and in her capacity as
Commissioner of the New YorkState Department of Social
Services, Sidney Houben, individually and in hiscapacity as
Director of the Bureau of Disability Determinations of the
New YorkStateDepartment of Social Services, H. Williams,
individually and in her capacity asDisability
Analyst/Specialist of the Bureau of Disability
Determinations of theDepartment of Social Services, and
Patricia Harris, in her capacity asSecretary of theUnited
States Department of Health and Human Services, Defendants-Appellees.
 No. 354, Docket 80-6133.
 United States Court of Appeals,
Second Circuit.
 Argued Oct. 14, 1980.
Decided Feb. 18, 1981.
 
 Martin A. Schwartz, White Plains, N. Y. (Westchester Legal Services, Inc., White Plains, N. Y., Judith A. Kaufman, New York City, of counsel), for plaintiffs-appellants.
 Nancy E. Friedman, Asst. U. S. Atty., S. D. New York, New York City (John S. Martin, Jr., U. S. Atty., S. D. New York, Peter C. Salerno, Asst. U. S. Atty., New York City, of counsel), for defendants-appellees.
 Before FRIENDLY, MANSFIELD and MESKILL, Circuit Judges.
 FRIENDLY, Circuit Judge:
 
 
 1
 As argued to us, this appeal from an order of the District Court for the Southern District of New York dismissing plaintiff's amended complaint for want of jurisdiction presented a veritable nightmare of jurisdictional and mootness problems. While the case was under advisement, Congress passed and the President signed the Federal Question Jurisdictional Amendments Act of 1980, 94 Stat. 2369, abolishing the amount-in-controversy requirement in federal question cases, 28 U.S.C. § 1331(a), with respect to all defendants.[1] Section 4 of the Act provides that it "shall apply to any civil action pending on the date of enactment of this Act." Although, as will be seen, this amendment does not provide a quick answer to all the problems presented, it somewhat simplifies them and, in our view, mandates a reversal and remand to the district court for further proceedings.
 
 Background
 
 2
 The administrative scheme forming the background of this case can be outlined briefly as follows: § 421 of Title II of the Social Security Act, 42 U.S.C. § 401 et seq., empowers the Secretary of Health and Human Services (Secretary) to enter into agreements with state agencies delegating authority to them to make initial determinations as to eligibility for disability benefits. Such an agreement exists between the Secretary and the State of New York, and delegates that authority to the Bureau of Disability Determinations (BDD) of the New York State Department of Social Services (NYSDSS), with the oversight of the Social Security Administration (SSA).
 
 
 3
 In a majority of cases a state agency, such as BDD, is directed periodically to assess a beneficiary's continued eligibility for benefits. If the agency's tentative assessment after investigation is that the beneficiary has ceased to be disabled, the beneficiary must be so informed by a pretermination notice, which also advises the beneficiary that he or she has at least ten days to submit additional evidence supporting a claim of continuing disability. At the expiration of this period, the state agency makes a formal determination which is then reviewed by the SSA. If the SSA agrees with the state agency, it notifies the beneficiary in writing of the termination and of the opportunity for de novo reconsideration by the state agency. Various other avenues also exist for administrative and judicial review of an adverse decision, but benefits are discontinued effective two months after the month in which the disability is found to have ceased. Thus, the pretermination notice and the ensuing ten-day period for submission of additional evidence constitute the only opportunities a beneficiary has to learn of the case against him or her and to contest it prior to the cut-off of disability payments.
 
 
 4
 The pretermination notices at the center of this litigation are of two kinds: written and telephonic. The procedures for written notices, as announced in the SSA's Disability Insurance State Manual (Manual), a guide for state agencies to the policies of the Secretary and her interpretations of the Act and regulations, provide that a written pretermination notice should contain a summary of the evidence and the rationale for the proposed termination of benefits. The procedures for telephonic notices have been revised during the period at issue in this case. Prior to May, 1979, a telephonic pretermination notice, as prescribed by the Manual, consisted solely of a telephone call to the beneficiary conveying the same information as a written notice, including a brief summary of the evidence and a statement of the reasons for termination. As of that date the SSA changed its policy, supplementing the telephone contact with a follow-up letter to be sent within a day of the call. This letter recapitulates the content of the phone conversation with the important exception that it does not set out a summary of the evidence or a statement explaining the agency's decision to terminate.
 
 The Complaint and Proceedings Below
 
 5
 This action was brought on September 7, 1979, and the plaintiff's motion to amend the complaint was granted on June 13, 1980. A summary of the amended complaint is as follows:
 
 
 6
 The action is a class action seeking injunctive and declaratory relief as well as compensatory damages for injuries suffered by the named plaintiff. The alleged class consists of New York residents who were or are recipients of disability benefits whose benefits have been terminated or threatened with termination without prior adequate written notice containing a summary of the evidence leading to the proposed termination and an explanation of the determination that the recipient is no longer under a disability. Plaintiff Catherine Ellis is such a recipient; her sole source of income has been such monthly benefits of $385.50. The complaint named four defendants: Barbara Blum, individually and as Commissioner of the NYSDSS; Sidney Houben, individually and as Director of BDD; H. Williams, individually and as Disability/Analyst Specialist of BDD; and Patricia Harris, as Secretary of the United States Department of Health, Education and Welfare (now Health and Human Services). We will sometimes refer to the first three as the state defendants, without thereby implying that they were engaged in state action.
 
 
 7
 After typical class action allegations, the amended complaint went on as follows: In November, 1978, prior to the institution of the revised procedure for telephonic pretermination notices, plaintiff Ellis received the first of three pretermination notices a telephone call from an individual who represented herself to be an employee of the SSA. The caller informed Ellis that her disability benefits would terminate as it was the opinion of the SSA that she was no longer disabled. Due to the anxiety caused by the call, Ellis suffered an epileptic seizure. Plaintiff did not submit any evidence to contest the proposed termination because she was unable to remember what evidence the SSA told her it was relying upon. She did contact her local Social Security office and was told by an employee not to worry about the telephone call, and that she was not "cut off". However, in January, 1979, she received a written formal Social Security Termination Notice from the SSA informing her that the medical evidence in her case indicated that she had become able to do substantial gainful work in October, 1978 and that the last disability payment to which she was entitled was the one she had received for the month of December, 1978.
 
 
 8
 Plaintiff thereupon retained Westchester Legal Services, Inc. Counsel protested termination, complaining of the impropriety of the telephone notice as a means by which to advise plaintiff of the opportunity to submit medical evidence of continued disability. By letter dated April 5, 1979, the HEW's Regional Counsel advised that plaintiff's benefits would be reinstated retroactive to January, 1979,[2] and that her case would be returned to BDD for reconsideration but that HEW counsel had no basis for believing that the result would be different. On or about April 24, 1979, plaintiff received a second pretermination notice, this time from BDD in a form letter which stated that she had "regained ability to engage in substantial gainful activity in October 1978", the date having been typed in the blank space that followed the form notice. The notice also informed her that she had ten days to submit evidence before a final determination would be made. After a telephone conversation with plaintiff's counsel, BDD on May 8, 1979 retracted the April 24 notice, saying it was "premature on our part" and that BDD was "continuing to further develop this case."
 
 
 9
 On August 20, 1979, Ellis received still another pretermination notice from BDD dated August 15, 1979. This informed her that she had "regained ability to engage in substantial gainful activity in June, 1979." The following sentence was typed in a space which had been left blank for the agency to fill in with a summary of the evidence and an explanation of the proposed termination: "Medical evidence in file indicates you retain the capacity to perform your customary work activity." The form also stated that unless plaintiff submitted further evidence within ten days, BDD would forward the record to the SSA where a "formal determination" would be made and benefits terminated as of August 31, 1979. As in all prior instances no further information was given and this rendered plaintiff "unable to submit any evidence or statements to support her claim of continuing disability." The written notices of April 24 and August 20 also caused her "emotional distress, anxiety, pain and suffering in that they placed her under an apprehension that her social security benefits would be terminated without setting forth the reasons therefore (sic )." (Emphasis deleted).
 
 
 10
 The thrust of the complaint was that defendants' use of a written pretermination notice that does not contain reasons and a summary of the evidence violates the due process clauses of the Fifth and Fourteenth Amendments, the Social Security Act, and the SSA's Manual, and that the provisions of the Manual authorizing telephonic pretermination notice likewise violate the Constitution.
 
 
 11
 The prayer for relief sought an order determining the action to be a proper class action under F.R.Civ.P. 23(a) and (b)(2); an injunction against terminating plaintiffs' Title II social security benefits without first providing adequate written notice of the reasons, including a summary of the evidence upon which the determination was made and an explanation why it has been determined that the recipient is no longer under a disability; an injunction against enforcing § 353.6 of the SSA's Manual to the extent that it authorizes telephonic pretermination notices; a mandatory injunction restoring all plaintiffs who have been terminated without adequate written notice to the level of benefits which they were receiving prior to termination; a mandatory injunction requiring Secretary Harris to take all necessary steps to insure that the state defendants provide adequate, written pretermination notices; entry of a declaratory judgment of the invalidity of termination of disability benefits by notices not containing the material noted above; entry of a final judgment awarding plaintiffs all benefits wrongfully withheld; entry of a final order requiring defendants to provide plaintiffs notice of their right to apply for retroactive disability benefits; entry of a judgment in favor of plaintiff Ellis awarding compensatory damages in the amount of $1,500, apparently for her emotional distress; and the grant to plaintiffs of their costs, disbursements and attorneys' fees and such further and other relief as may be just and equitable.
 
 
 12
 On March 17, 1980, the United States, representing all the defendants, moved to dismiss the action under F.R.Civ.P. 12(b) and (c). This was supported by an affidavit of Jean Hall Hinckley, Director of SSA's Division of Post-Adjudicative and Technical Policy. The affidavit recited various steps BDD had taken to reevaluate Ellis in September, 1978. Additional facts were that on July 3, 1979, Ellis was asked to see a consulting psychologist on July 9 but did not attend. Also BDD on October 12, 1979, sent a letter to plaintiff's attorney asking her to disregard the pretermination notice of August 20, 1979, and requesting a psychological examination of the plaintiff. The examination resulted in a determination by BDD that she had a " 'mental deficiency with organic features' that is not expected to improve over time", and on November 30, 1979, Ellis was informed that her benefits would continue. Plaintiff's counsel countered with affidavits suggesting that the numerous retractions of termination and pretermination notices were due to defendants' knowledge of the activities of plaintiff's counsel and particularly the knowledge in the spring of 1979 that a complaint was being prepared, the inference being that defendants were endeavoring to keep the constitutional issues raised by plaintiff from being decided by the courts. Plaintiff had not moved for class certification until March 5, 1980.
 
 
 13
 The amended complaint asserted four jurisdictional bases, 42 U.S.C. § 405(g) and 28 U.S.C. §§ 1331, 1361, and 1343(3). In a scholarly opinion the district judge dismissed the complaint for lack of jurisdiction. She concluded that 42 U.S.C. § 405(g) was unavailable due to the lack of a final decision by the Secretary adverse to the claimant; that resort to 28 U.S.C. § 1331 was precluded by the final sentence of 42 U.S.C. § 405(h); that the standards for mandamus jurisdiction under 28 U.S.C. § 1361, laid down by this court in Lovallo v. Froehlke, 468 F.2d 340, 343 (1972), cert. denied, 411 U.S. 918, 93 S.Ct. 1555, 36 L.Ed.2d 310 (1973), had not been met; and that 28 U.S.C. § 1343(3) was inapplicable to the state defendants since they were not acting "under color of any State law, statute, ordinance, regulation, custom or usage" but as agents of the United States. Having concluded that it lacked jurisdiction, the district court found it unnecessary to rule on the plaintiff's motion for class certification, or on the Government's contention that the decision to continue Ellis' benefits had mooted the entire controversy.
 
 Sections § 405(g) and 405(h)
 
 14
 The jurisdictional difficulties in this case stem primarily from the broad reading given the last sentence of § 405(h) in Weinberger v. Salfi, 422 U.S. 749, 95 S.Ct. 2457, 45 L.Ed.2d 522 (1975). Mere perusal of the statutory language,[3] which comes down from the Social Security Act Amendments of 1939, especially in context with § 405(g), would not immediately suggest to the ordinary reader an intention to render § 1331 unavailable in an action challenging the constitutionality of substantive provisions of the Social Security Act, or the procedures adopted in its administration, even though a ruling favorable to plaintiffs might require additional social security payments to be made by the Government. One would have supposed that the purpose was rather to make clear that the procedures of § 405(g) for judicial review of final action by the Secretary were exclusive and could not be circumvented by resort to the general jurisdiction of the district courts. Congress' attention appears to have been devoted to the run-of-mine case where an applicant for benefits challenged the Secretary's determination of the facts, interpretation of the law, or application of the law to the facts. Certainly the language of § 405(g), providing that "(a)ny individual, after any final decision of the Secretary made after a hearing to which he was a party, irrespective of the amount in controversy, may obtain a review of such decision by a civil action ... brought in the district court of the United States ...." and that the "court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Secretary", does not suggest that Congress in 1939 thought it was establishing procedures to be used in class actions challenging the constitutionality of the provisions of the Act or of procedures adopted by the Secretary, and seeking broad injunctive and declaratory relief.[4]
 
 
 15
 However, in Weinberger v. Salfi, supra, the Supreme Court, with three Justices dissenting, held that the plain language of 42 U.S.C. § 405(h) barred resort to 28 U.S.C. § 1331 in a class action challenging the constitutionality of a substantive provision of the Social Security Act. Just as the decision was surprising in restricting access to 28 U.S.C. § 1331, it surprised in the other direction, perhaps as a necessary consequence, by sustaining jurisdiction under 42 U.S.C. § 405(g) in a situation where previously this would hardly have been thought to exist. Such jurisdiction was found with respect to the named plaintiffs who had submitted applications to the SSA although their proceedings had not gone beyond a filing with a district Social Security Office and, upon denial, to the Regional Office for reconsideration. Conceding that this fell "short of meeting the literal requirement of § 405(g) that there shall have been a 'final decision of the Secretary made after a hearing' ", 422 U.S. at 764, 95 S.Ct. at 2466, as well as further steps required by his regulations, the Court felt that nothing more was required when under the plain terms of the statute, which the Secretary was required to respect, further proceedings before him would have been fruitless. Id. at 765-66, 95 S.Ct. at 2466-67.[5]
 
 
 16
 The jurisdictional issue again arose in Mathews v. Eldridge, 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976). Eldridge claimed that termination of his disability benefits was unconstitutional because he had not been given a pretermination trial-type hearing of the sort required for welfare recipients in Goldberg v. Kelly, 397 U.S. 254, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970). The Court characterized Salfi as holding "that 42 U.S.C. § 405(h) precludes federal-question jurisdiction in an action challenging denial of claimed benefits" (footnote omitted), with the result being that "(t)he only avenue for judicial review is 42 U.S.C. § 405(g), which requires exhaustion of the administrative remedies provided under the Act as a jurisdictional prerequisite." 424 U.S. at 327, 96 S.Ct. at 899. After noting that in Salfi, "the requirement that there be a final decision by the Secretary after a hearing was regarded as 'central to the requisite grant of subject matter jurisdiction' ", 424 U.S. at 328, 96 S.Ct. at 899, quoting 422 U.S. at 764, 95 S.Ct. at 2466, the Eldridge Court read Salfi as reducing the "purely 'jurisdictional' " condition of § 405(g) to the requirement that a claim for benefits be submitted to the Secretary, the requirement for exhaustion of administrative remedies being a waivable one.
 
 
 17
 Subsequent decisions have continued to channel judicial review through § 405(g) while eliminating questions about its versatility as a jurisdictional grant. Califano v. Sanders, 430 U.S. 99, 97 S.Ct. 980, 51 L.Ed.2d 192 (1977), although giving a narrow reading to Salfi and Eldridge in one respect,[6] relied in part upon § 405(h) in holding that § 10 of the Administrative Procedure Act (APA) does not provide an alternative jurisdictional base for reviewing a decision of the Secretary refusing to reopen an application for disability benefits. And Califano v. Yamasaki, 442 U.S. 682, 99 S.Ct. 2545, 61 L.Ed.2d 176 (1979), while avoiding for the third time, see Mathews v. Eldridge, supra, 424 U.S. at 332 n.12, 96 S.Ct. at 901; Norton v. Mathews, 427 U.S. 524, 529-30, 96 S.Ct. 2771, 2774, 49 L.Ed.2d 672 (1976), the question whether mandamus jurisdiction exists pursuant to 28 U.S.C. § 1361 to review SSA procedures, 442 U.S. at 697-98, 99 S.Ct. at 2555-56, established that § 405(g) does not deprive district courts of their power to grant injunctive relief or to entertain class actions in favor of persons who have filed claims with the Secretary.
 
 
 18
 While these cases might seem to foreshadow preclusion of all jurisdictional routes other than § 405(g) for attacks on actions of the SSA, this is not the case. Salfi 's embrace of a literal reading of § 405(h) contains its own limitation: that section bars only an "action against the United States, the Secretary, or any officer or employee thereof", which is grounded on a jurisdictional statute formerly contained in section 24 of the Judicial Code, and which seeks to recover on a claim arising under Title II. For a variety of reasons to be explained below, the claims asserted by the plaintiff in this case do not fit this description.
 
 
 19
 Jurisdiction over the Claims Against the State Defendants
 
 
 20
 In her complaint, the plaintiff did not assert general federal-question jurisdiction over the claims against the state defendants, apparently because she did not believe that these satisfied the amount-in-controversy requirement then applicable to suits based on § 1331 against non-federal defendants. However, the change in the law that occurred while this appeal was pending makes this an especially appropriate case for exercising our freedom to predicate jurisdiction on theories not pleaded below. See 1 Moore, Federal Practice P 0.060(3) at 622 n.5 (2d ed. 1980).
 
 
 21
 On its face § 405(h)'s ban on actions "against the United States, the Secretary, or any officer or employee thereof" does not apply to a suit against state officials. However, a forceful argument can be made that the state officials administering the disability-benefits program are acting under color of federal law as mere agents of the Secretary, and as such are within the ambit of § 405(h). To hold otherwise arguably would invite applicants for Title II benefits to circumvent §§ 405(g) and (h) by bringing suit under § 1331 against the state officials instead of the Secretary, particularly now that the amount-in-controversy requirement of § 1331 has been eliminated as to all defendants.
 
 
 22
 While we have little doubt that, for the reasons indicated, the scope of § 405(h) extends to suits in which claims against state officials are merely disguised disputes with the Secretary of the sort described in §§ 405(g) and (h), that is not this case. Clearly, § 405(h) does not bar plaintiff's claim against the state defendants for damages to redress her emotional distress, since, even if this were alleged against the Secretary, it would not be a claim "arising under" Title II. With respect to the claims for injunctive and declaratory relief, the complaint makes plain that the plaintiff's grievances against the state defendants and the Secretary are separate and distinct. The complaint alleged that the state defendants "have been and are carrying out a practice and policy of making determinations of termination of ... disability benefits without providing the recipients with adequate written notices", and that this bad-faith practice was in violation of the procedures authorized by the Secretary as contained in the SSA's Manual as well as in violation of the Act and the due process clauses of the Fifth and Fourteenth Amendments. The plaintiff apparently has no quarrel with the procedures for written pretermination notices spelled out in the SSA's Manual, although she does object to the provision for telephonic notices,[7] and charges the Secretary solely with failing to carry out her mandatory duty to compel the state defendants to comply with federal law. The claims against the state and federal defendants being thus distinct, there is no reason to extend the ban of § 405(h) to preclude § 1331 jurisdiction over the claims for prospective relief against the state defendants in this case.[8] See Town Court Nursing Center, Inc. v. Beal, 586 F.2d 266, 279 (3 Cir. 1978) (in banc). Although we hold below that the state defendants were acting under color of federal law, this, without more, does not suffice to render them officers or employees of the United States within the meaning of § 405(h).[9]Jurisdiction over the Claims Against the Secretary
 
 
 23
 The district court determined that it had no jurisdiction over the Secretary pursuant to 42 U.S.C. § 405(g), 28 U.S.C. § 1331, or 28 U.S.C. § 1361. With respect to § 405(g), the court reasoned that before jurisdiction would lie, there must be a decision of the Secretary that is both final and adverse to the plaintiff, and that neither of these conditions had been met. On appeal, plaintiff contends that at the time of the complaint she had received an adverse "decision", namely, the written pretermination notice of August 20; that the subsequent decision to continue her benefits could not deprive the court of subject-matter jurisdiction; that the requirement of a "final" decision is a "waivable" one under Mathews v. Eldridge, supra; that her claim of a right to a fuller pretermination notice is essentially similar to Eldridge's claim of entitlement to a pretermination hearing, at least for the purpose of exhaustion, and that the exhaustion requirement should therefore be deemed waived as it was in Eldridge. Concerning jurisdiction under § 1331, the plaintiff, following St. Louis University v. Blue Cross Hospital Service, 537 F.2d 283, 291-92 (8 Cir.), cert. denied, 429 U.S. 977, 97 S.Ct. 484, 50 L.Ed.2d 584 (1976), seeks to distinguish Weinberger v. Salfi, supra, on which the district court relied, by arguing that § 405(h), even as interpreted in Salfi, bars only actions "to recover on any claim arising under" Title II, and does not preclude actions such as this one, contesting the constitutionality of termination procedures.
 
 
 24
 These arguments raise difficult questions. Without engaging in a full discussion, we note that plaintiff's position as to § 405(g)'s requirement of a final decision arguably finds support in the Supreme Court's observation that
 
 
 25
 Decisions in different contexts have emphasized that the nature of the claim being asserted and the consequences of deferment of judicial review are important factors in determining whether a statutory requirement of finality has been satisfied.
 
 
 26
 and that
 
 
 27
 the core principle that statutorily created finality requirements should, if possible, be construed so as not to cause crucial collateral claims to be lost and potentially irreparable injuries to be suffered remains applicable.
 
 
 28
 Mathews v. Eldridge, supra, 424 U.S. at 331 n.11, 96 S.Ct. at 901. Here, as in Eldridge, Ellis raised "at least a colorable claim" that because she was unable to present an effective response to the pretermination notice, letting proceedings take their course very likely would have resulted in termination of her benefits, inflicting damage not recompensable through ultimate payments. On the other hand, Eldridge, as opposed to Ellis, did not file suit until after a decision had been made to terminate his benefits, and there is language in Eldridge suggesting that a termination decision is a threshold requirement of the statute. See 424 U.S. at 329, 332, 96 S.Ct. at 900, 901. No case of which we are aware has gone so far as to find § 405(g) jurisdiction where no decision to terminate benefits had yet been made, and we would be reluctant to blaze the trail.[10]
 
 
 29
 Resolution of the issue of § 1331 jurisdiction over the Secretary is also difficult. While we are inclined to agree with the Eighth Circuit's decision that Salfi did not preclude § 1331 jurisdiction over procedural challenges not necessarily affecting entitlement to benefits, see St. Louis University v. Blue Cross Hospital Service, supra, we find the question complicated by the subsequent decisions in Eldridge and Califano v. Sanders, supra. Eldridge raised the procedural claim of his right to a pretermination hearing, yet the Court relied on Salfi as restricting judicial review to 42 U.S.C. § 405(g), 424 U.S. at 327, 96 S.Ct. at 899. In Sanders, the Court reiterated that federal question jurisdiction is barred by § 405(h), and seemed to assume that this had been the case in Eldridge. 430 U.S. at 109, 97 S.Ct. at 986.
 
 
 30
 Fortunately, however, we need not decide whether jurisdiction over the Secretary exists under § 405(g) or § 1331, since we are satisfied that jurisdiction is provided by 28 U.S.C. § 1361, added by the Mandamus and Venue Act of 1962, 76 Stat. 744.[11] An impressive array of cases in this and other circuits has established that § 1361 jurisdiction will lie to review procedures employed in administering social security benefits, see, e. g., Martinez v. Richardson, 472 F.2d 1121, 1125-26 (10 Cir. 1973); Knuckles v. Weinberger, 511 F.2d 1221, 1222 (9 Cir. 1975); Frost v. Weinberger, 515 F.2d 57, 62 (2 Cir. 1975), cert. denied, 424 U.S. 958, 96 S.Ct. 1435, 47 L.Ed.2d 364 (1976); Ryan v. Shea, 525 F.2d 268, 271-72 (10 Cir. 1975); Elliott v. Weinberger, 564 F.2d 1219, 1225-27 (9 Cir. 1977), aff'd in part on other grounds sub nom. Califano v. Yamasaki, 442 U.S. 682, 99 S.Ct. 2545, 61 L.Ed.2d 176 (1979); White v. Mathews, 559 F.2d 852, 856 (2 Cir. 1977), cert. denied, 435 U.S. 908, 98 S.Ct. 1458, 55 L.Ed.2d 500 (1978); Barnett v. Califano, 580 F.2d 28, 31 (2 Cir. 1978); Sharpe v. Harris, 621 F.2d 530 (2 Cir. 1980). Even more significantly, this court has twice held since Salfi that § 405(h) does not preclude mandamus jurisdiction to review the Secretary's procedures in disability cases, see White v. Mathews, supra; Barnett v. Califano, supra.[12] Accepting this, the district court nevertheless found mandamus jurisdiction wanting because plaintiff had failed to exhaust her administrative remedies as required by Lovallo v. Froehlke, supra.
 
 
 31
 In opposition to the exhaustion requirement, plaintiff cites cases holding that exhaustion is not required "where the very administrative procedure under attack is the one which the agency says must be exhausted", Finnerty v. Cowen, 508 F.2d 979, 982-83 (2 Cir. 1974); accord, Fuentes v. Roher, 519 F.2d 379, 387 (2 Cir. 1975); or where issues of procedural due process have been raised, see, e. g., Mathews v. Eldridge, supra, 424 U.S. at 329-32, 96 S.Ct. at 900-01. These cases are not entirely dispositive here, since, with the exception of the Secretary's endorsement of telephonic pretermination notices, plaintiff is not challenging the procedures of the Secretary, but only the Secretary's failure to require the state defendants to comply with them. Nevertheless, just as "(i)t is unrealistic to expect that the Secretary would consider substantial changes in the current administrative review system at the behest of a single aid recipient raising a constitutional challenge in an adjudicatory context", Mathews v. Eldridge, supra, 424 U.S. at 330, 96 S.Ct. at 900, it would be foolish to expect the Secretary in an adjudicatory administrative proceeding to take steps to remedy what plaintiff alleges to be a full-blown policy of the state defendants of issuing deficient pretermination notices. Rather one would expect the Secretary simply to retract an individual incomplete notice upon its discovery. Indeed, this is precisely the policy of the Secretary as stated in argument to this court and as demonstrated by the facts of this case. Twice plaintiff received allegedly inadequate pretermination notices and twice she complained, only to have the notices retracted and a new but equally defective one issued. We see no point in requiring plaintiff further to exhaust her administrative remedies before allowing her to litigate the question of the Secretary's duty to compel compliance with prescribed procedures.
 
 
 32
 Although the precedents of our own court, as noted above, and others as well, see Ryan v. Shea, supra; Elliott v. Weinberger, supra ; have established the availability of mandamus jurisdiction over the Secretary to entertain procedural challenges despite § 405(h), it may be worthwhile to reexamine the question here. Since the enactment of the Mandamus and Venue Act of 1962 there has been a debate over the scope of jurisdiction granted in § 1361. Compare Davis, Administrative Law of the Seventies § 23.09 (1976), with 1 Moore, Federal Practice, supra, P 0.62(17) at 700.49-700.51. But no one could reasonably take issue with Professor Moore's explanation of the trend toward wider use of that jurisdictional provision:
 
 
 33
 For a number of reasons the years between 1962 and 1976 saw considerable pressure toward liberalization of the mandamus remedy. One such pressure was a growing emphasis on litigation of the rights of recipients of government dispensing programs. While such litigation generally concerns rights that are created by federal law, and therefore fall within the general federal question jurisdiction, quite frequently they do not involve the minimum amount in controversy required until 1976 under § 1331. The litigants sought to avoid ... embarrassment by pleading as alternative bases for jurisdiction either § 1361, or § 1337, or § 1(3)43 with pendent claims, or 5 USC § 701, et seq., sometimes singly and sometimes in combination. In some such cases jurisdiction was upheld under § 1361.
 
 
 34
 1 Moore, Federal Practice, supra, at 700.54 (footnotes omitted). Thus, in Frost v. Weinberger, supra, an action challenging reduction of AFDC benefits without a prior hearing, decided before Weinberger v. Salfi, supra, and before the 1976 elimination of the amount-in-controversy requirement for general federal question suits against federal officers, 90 Stat. 2721, we alluded to the jurisdictional amount problem, expressing doubts about the possibility of aggregating the claims of the class, and continued:
 
 
 35
 We find it unnecessary to determine whether those difficulties preclude jurisdiction under 28 U.S.C. § 1331 since we are willing to predicate federal jurisdiction on 28 U.S.C. § 1361 .... Granted that it may be doubtful whether Congress intended § 1361 to cover situations of this sort, ... the language is sufficiently broad to do so, ... at least in a case like this where the sole issue is the type of hearing required.
 
 
 36
 515 F.2d at 61-62 (footnotes and citations omitted).
 
 
 37
 With the abolition of the jurisdictional amount in § 1331 suits against federal officers in 1976, however, the trend toward more liberal use of alternative jurisdictional statutes lost a great deal of force. This was reflected in the Supreme Court's decision in Califano v. Sanders, supra, which relied heavily on the 1976 amendment to § 1331 in reaching its conclusion that § 10 of the APA is not an independent grant of subject-matter jurisdiction to the federal courts. The plaintiff in that case had filed a claim for disability benefits in 1964 which was denied. An administrative law judge treated a second application alleging the same grounds for eligibility as an attempt to reopen the prior claim, and dismissed it. The plaintiff then filed a suit in district court challenging the Secretary's refusal to reopen which was dismissed for lack of jurisdiction. On appeal the Seventh Circuit agreed that jurisdiction to review a decision not to reopen a claim is not authorized by § 405(g) of the Social Security Act, but found jurisdiction under the APA, holding that § 405(h) does not limit judicial review to § 405(g) alone. The Supreme Court, although recognizing that several earlier decisions had arguably assumed the APA to be an independent grant of jurisdiction, concluded that Congress' 1976 decision to expand federal question jurisdiction with respect to federal officers "now largely undercuts the rationale for interpreting the APA as an independent jurisdictional provision." 430 U.S. at 105, 97 S.Ct. at 984. With respect to § 405(h), the Court said:In amending § 1331, Congress obviously has expressly acted to fill the jurisdictional void created by the pre-existing amount-in-controversy requirement. This new jurisdictional grant was qualified, however, by the retention of § 205(h) (42 U.S.C. § 405(h)) as preclusive of actions such as this that arise under the Social Security Act. Read together, the expansion of § 1331, coupled with the retention of § 205(h), apparently expresses Congress' view of the desired contours of federal-question jurisdiction over agency action. A broad reading of the APA in this instance would serve no purpose other than to modify Congress' new jurisdictional enactment by overriding its decision to limit § 1331 through the preservation of § 205(h). Squarely faced with the question of APA jurisdiction for the first time, Congress' explicit entry into the jurisdictional arena counsels against our reading the APA as an implied jurisdictional grant designed solely to fill such an interstitial gap in § 1331 jurisdiction.
 
 
 38
 430 U.S. at 106-07, 97 S.Ct. at 985.
 
 
 39
 Insofar as the reasoning of this passage admits of general application, it would appear to indicate the Court's reluctance to allow any interference with the scheme of §§ 405(g) and (h) from other jurisdictional provisions. As we have noted, the Court has repeatedly avoided the question of § 405(h)'s effect on § 1361 jurisdiction to review procedures of the Secretary, in the process obliterating the complexities of § 405(g) and transforming it into a more accessible grant of jurisdiction which does not necessarily require exhaustion of remedies, see Weinberger v. Salfi, supra; Mathews v. Eldridge, supra ; and which accommodates class actions as well as injunctive relief, see Califano v. Yamasaki, supra.
 
 
 40
 There are, however, several reasons why these events, most of which predate our decisions in White v. Mathews, supra, and Barnett v. Califano, supra, do not persuade us to alter the views adopted there. One is that, whereas Sanders read the legislative history of the 1976 amendment to § 1331 as evincing a Congressional belief that the APA did not confer jurisdiction, ample evidence exists that Congress intended the expanded federal question jurisdiction over federal officials to supplement the jurisdiction already available under § 1361. An extended quotation from the House Report suffices to demonstrate this:
 
 
 41
 Presently, the jurisdictional amount requirement is applicable where aggrieved private persons are seeking nonstatutory review of Federal administrative actions in suits brought against Federal officers or agencies. This category provides the only significant instances in which the jurisdictional amount requirement ... is an effective limitation, either because the right cannot be valued or it is worth less than $10,000 and there is no special statute applicable without an amount-in-controversy provision. Yet even in this situation, the limitation can be circumvented if the plaintiff brings his action in the District of Columbia or if he can cast his action in the form of a mandamus proceeding under 28 U.S.C. section 1361, the Mandamus and Venue Act of 1962.
 
 
 42
 The resulting situation is hardly a logical or defensible one. In 1962 Congress, disturbed by the inability of litigants to obtain mandamus relief in local courts distributed around the country, conferred such jurisdiction on all district courts without regard to the amount in controversy. The more traditional exercise of injunctive or declaratory authority, however, remains subject to the requirement of a minimum jurisdictional amount whenever no special Federal question statute is available except in the District of Columbia. The same arguments that supported the Mandamus and Venue Act of 1962 the expense and inconvenience of forcing litigants from all over the country to bring their claims to a District of Columbia court support the elimination of the remaining anachronism in injunction suits against Federal officers: the jurisdictional amount in controversy.
 
 
 43
 H.Rep.No. 94-1656, 94th Cong., 2d Sess. 15-16 (1976), (1976) U.S.Code Cong. & Adm.News 6121, 6136; see also S.Rep.No. 94-996, 94th Cong., 2d Sess. 15. While the quoted passage does not focus on the scope of mandamus jurisdiction, there is nothing in it or in the legislative history as a whole to indicate that Congress disapproved of the pre-1976 cases employing mandamus jurisdiction to review federal administrative action.[13] Absent any evidence to the contrary, we conclude that the 1976 amendment to § 1331 left intact our pre-1976 mandamus cases such as Langevin v. Chenango Court, 447 F.2d 296 (2 Cir. 1971), and Frost v. Weinberger, supra.[14]
 
 
 44
 A second consideration is that the mandamus jurisdiction the 1962 Act extended to all district courts had been exercised by the District of Columbia courts long before the advent of § 405(h) in 1939. As enacted, the third sentence of § 405(h) barred actions brought under section 24 of the Judicial Code, a section later classified to section 41 of Title 28 which, as noted above, contained all the general grants of jurisdiction to the district courts, see note 3, supra. No mention was made of the uncodified jurisdiction of the district court for the District of Columbia to issue writs of mandamus, a jurisdiction derived from the Act of February 27, 1801, 2 Stat. 103, providing that the laws of Maryland should continue in force in that part of the District ceded by Maryland to the United States. See Kendall v. United States ex rel. Stokes, 37 U.S. (12 Pet.) 524, 9 L.Ed. 1181 (1838); Byse & Fiocca, Section 1361 of the Mandamus and Venue Act of 1962 and "Nonstatutory" Judicial Review of Federal Administrative Action, 81 Harv.L.Rev. 308, 310-312 (1967). It would seem plausible to conclude from this that when Congress enacted § 405(h) in 1939, it did not bar the District of Columbia courts from issuing writs of mandamus against the Secretary's predecessor, and that when the power to issue such writs was decentralized in 1962, it did not then suddenly become subject to § 405(h)'s stricture.
 
 
 45
 Indeed, the 1939 and 1962 Congresses would have been quite justified in thinking that mandamus jurisdiction posed no threat to the system of judicial review contained in §§ 405(g) and (h). Traditionally, a writ of mandamus will not issue unless the plaintiff has exhausted administrative remedies and unless the defendant owes the plaintiff a clear duty to act. But the typical issues Congress intended to be resolved in hearings before the Secretary pursuant to § 405(b) and reviewed by the federal courts in accordance with § 405(g) were close factual questions committed by necessity to the Secretary's judgment and reviewable only upon the substantial evidence standard. A minimum of interference would thus be expected from the co-existence of mandamus, since these essentially factual disputes are not amenable to the mandamus remedy. Conversely, it would strain belief to think that Congress meant to require a plaintiff to forego mandamus and resort to prolonged § 405 procedures where a clear duty in the defendant to pay disability benefits, e. g., a prior judgment, had been demonstrated.
 
 
 46
 However, even if the ban articulated in § 405(h) were read as applying to actions brought under jurisdictional grants other than those formerly collected in section 24 of the Judicial Code, such as the mandamus statute, it would not follow that suits like the instant one would be defeated. Unlike the plaintiff in Sanders, whose action was the run-of-mine type clearly fitting the language "to recover on any claim arising under" Title II, the plaintiff in this case, like the plaintiffs in White and Barnett, raises only a procedural challenge, the adjudication of which will not affect the substantive question of continued entitlement to disability payments. As noted above, in suits under the Medicare Act, which incorporates § 405(h), 42 U.S.C. § 1395ii, it has been held that such procedural claims are not claims "to recover" benefits and may therefore be grounded on § 1331. See, e. g., St. Louis University v. Blue Cross Hospital Service, supra; Humana of South Carolina, Inc., 590 F.2d 1070, 1080-81 (D.C.Cir.1978). But see Trinity Memorial Hospital of Cudahy, Inc. v. Associated Hospital Service, Inc., 570 F.2d 660, 667 (7 Cir. 1977); American Association of Councils of Medical Staffs of Private Hospitals, Inc. v. Califano, 575 F.2d 1367, 1372 (5 Cir. 1978), cert. denied, 439 U.S. 1114, 99 S.Ct. 1018, 59 L.Ed.2d 72 (1979). Whether or not that position is correct, we do not think that the language of § 405(h) can be stretched to include procedural claims resting on mandamus jurisdiction. The case at bar is particularly strong in this respect, at least as regards Ellis: because she filed her action before being terminated, she did not even claim entitlement to benefits, and because her benefits in fact continued without interruption, there is no possibility that an award of benefits could be granted her in this lawsuit. While it is true that the complaint did seek reinstatement of benefits for those members of the class who had been terminated without receiving a pretermination notice containing a statement of reasons and a summary of evidence, we are not convinced that a temporary reinstatement of benefits pending compliance with due process is the kind of recovery that Congress had in mind when it enacted § 405(h) in 1939. And in any event, we do not see much sense in making our jurisdiction depend upon a less thorough pleading of the relief desired. We thus adhere to our prior decisions in White and Barnett and answer the question expressly left open by the Supreme Court in the three cases cited by holding that § 405(h) does not preclude assertion of § 1361 jurisdiction over claims essentially procedural in nature.[15] Perceiving no other obstacles to mandamus jurisdiction, we rule that the district court erred in concluding it lacked jurisdiction over the claims against the Secretary.
 
 Mootness
 
 47
 Establishing subject-matter jurisdiction over the state defendants under § 1331 as recently amended and over the Secretary under § 1361 is by no means the end of the story, since we must still grapple with the contention, vigorously pressed by the Government, that the case was mooted on November 30, 1979, when Ellis was notified that her disability benefits would continue. While that event would have mooted the action on her own behalf had the complaint been comprised solely of claims for the restoration of benefits and injunctive and declaratory relief,[16] its effect cannot be considered apart from plaintiff's allegation of $1,500 damages as compensation for her emotional suffering. This claim for damages flowing from the telephonic and written pretermination notices saves the action from the bar of mootness, provided it "is not so insubstantial or so clearly foreclosed by prior decisions that this case may not proceed." Memphis Light, Gas & Water Division v. Craft, 436 U.S. 1, 9, 98 S.Ct. 1554, 1560, 56 L.Ed.2d 30 (1978).
 
 
 48
 The foundation for Ellis' damages claim is Carey v. Piphus, 435 U.S. 247, 98 S.Ct. 1042, 55 L.Ed.2d 252 (1978), which we followed and applied in Davis v. Village Park II Realty, 578 F.2d 461 (2 Cir. 1978). Carey held, so far as here relevant, that, in an action under 42 U.S.C. § 1983, damages for emotional distress could be recovered upon proof that the injury resulted from a violation of procedural due process even though the adverse substantive action turned out to have been justified, 435 U.S. at 263-64, 98 S.Ct. at 1052, and that nominal damages could be recovered for such a violation without any proof of injury whatever. 435 U.S. at 266, 98 S.Ct. at 1053. Davis permitted an award of damages for emotional distress caused by a violation of the plaintiff's First Amendment rights that consisted of a threat to evict her from her leased home in retaliation for her advocacy of tenants' interests. We held that, even though the notice of eviction was withdrawn, the availability of either nominal or compensatory damages was sufficient to prevent the case from becoming moot. 578 F.2d at 464.
 
 
 49
 Plaintiff would base her damages claim on 42 U.S.C. § 1983, assuming the state defendants were acting under color of state law, or alternatively, on the due process clause of the Fifth Amendment, if they were not. We agree with the district court that the state officials were not acting under color of state law,[17] with the result that § 1983 is unavailable. However, Davis v. Passman, 442 U.S. 228, 99 S.Ct. 2264, 60 L.Ed.2d 846 (1979), put to rest any questions about implying a cause of action for damages under the Fifth Amendment's due process clause.[18] And we perceive no reason for a different rule of damages when a plaintiff's due process claim derives from the Constitution, not through an implementing statute such as 42 U.S.C. § 1983, but directly under the doctrine of Bivens v. Six Unknown Federal Narcotics Agents, 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971). Carey did not rely on any language in or legislative history of the Civil Rights Act that affirmatively indicated an intention to allow damages of the sort here under discussion. Decision turned rather on the analogy to common law tort actions and the Court's perception of constitutional policy. These considerations apply equally to Bivens-type actions. Hence it is not surprising that two courts of appeals have applied Carey's damage rule to Bivens actions without even discussing the possibility that a rule of damages announced in a § 1983 action might be inapplicable to a cause of action derived directly from the Constitution. See Halperin v. Kissinger, 606 F.2d 1192, 1207-08 & nn.100, 103 (D.C.Cir.1979), petition for cert. granted, 446 U.S. 951, 100 S.Ct. 2915, 64 L.Ed.2d 807 (1980); Bishop v. Tice, 622 F.2d 349, 357 & n.17 (8 Cir. 1980). Those decisions appear to be in line with the general trend in the appellate courts to incorporate § 1983 law into Bivens suits. See, e. g., Paton v. La Prade, 524 F.2d 862, 871-72 (3 Cir. 1975); Rodriquez v. Ritchey, 539 F.2d 394, 399-400 (5 Cir. 1976), modified upon rehearing in banc, 556 F.2d 1185 (1977), cert. denied, 434 U.S. 1047, 98 S.Ct. 894, 54 L.Ed.2d 799 (1978). See also Note, Damage Awards for Constitutional Torts: A Reconsideration after Carey v. Piphus, 93 Harv.L.Rev. 966, 973 and n.50 (1980).
 
 
 50
 The Supreme Court's pronouncements also support the view that rules with respect to damages issues rules worked out in the § 1983 context are applicable to Bivens actions. In Butz v. Economou, 438 U.S. 478, 98 S.Ct. 2894, 57 L.Ed.2d 895 (1978), a Bivens action where a major issue was whether federal officials were in general entitled to absolute immunity, the Court adopted the standard of qualified immunity it had developed in § 1983 cases involving state officials. Addressing the possibility that different rules should apply, the Court agreed with the perception of numerous courts of appeals that:
 
 
 51
 in the absence of congressional direction to the contrary, there is no basis for according to federal officials a higher degree of immunity from liability when sued for a constitutional infringement as authorized by Bivens than is accorded state officials when sued for the identical violation under § 1983.
 
 
 52
 438 U.S. at 500, 98 S.Ct. at 2907. See also Carlson v. Green, 446 U.S. 14, 100 S.Ct. 1468, 64 L.Ed.2d 15 (1980), reaffirming Butz and strongly suggesting that identical rules should govern the availability of punitive damages in § 1983 and Bivens actions, id. at 21-22, 100 S.Ct. at 1472-1473 although rejecting as inapplicable to Bivens suits the rule holding state law to be controlling with respect to the survivorship of § 1983 actions, id. at 23-25, 100 S.Ct. at 1474-75.
 
 
 53
 It is thus established that Ellis has a live claim for damages against the state defendants, and that it was therefore improper for the district court wholly to dismiss the complaint. The question remains whether, assuming the district court were to certify the class, the class claims for declaratory and injunctive relief would still be viable.
 
 
 54
 Trial of plaintiff's damages claim will necessarily require the district court to pass on the very question of the validity of the pretermination practices on which the propriety of declaratory or injunctive relief depends. Arguably, at least under some circumstances, a favorable decision on Ellis' damages claim would also determine the right of other disability recipients to declaratory or injunctive relief, under the rule of Blonder-Tongue Laboratories, Inc. v. University of Illinois Foundation, 402 U.S. 313, 91 S.Ct. 1434, 28 L.Ed.2d 788 (1971). See, however, Restatement of Judgments 2d § 68.1(e) and comment on p. 39, Tent. Draft No. 4 (April 15, 1977). In any event, it would be a waste of judicial resources if after the district court and, very likely, this court on a subsequent appeal, had been obliged to consider the soundness of defendants' termination procedures, we were again obliged to rule on the issues in an identical suit by another member of the same class. The Supreme Court, noting the "flexible character" of the mootness doctrine, has recognized that "vigorous advocacy can be assured through means other than the traditional requirement of a 'personal stake in the outcome.' " United States Parole Comm'n v. Geraghty, 445 U.S. 388, 400, 404, 100 S.Ct. 1202, 1210, 1212, 63 L.Ed.2d 479 (1980). Here, the persistence of plaintiff in pursuing this litigation after her own benefits were continued, despite the small amount of her damages claim, and the excellence of the brief and argument of her counsel in this court afford sufficient guarantees that the claims for declaratory and injunctive relief would be pressed with ardor, see United States Parole Comm'n v. Geraghty, supra, 445 U.S. at 404, 100 S.Ct. at 1212; Frost v. Weinberger, supra, 515 F.2d at 64. Thus, if the district court, learning of the amendment to 28 U.S.C. § 1331 providing jurisdiction over the claims against the state defendants and of our view that plaintiff has a live damages claim, should see fit to grant class certification, we foresee no mootness barrier to adjudication of the class claims for prospective relief.
 
 
 55
 This leaves only the Secretary, against whom the plaintiff neglected to file any claim for damages. We are convinced that it would be premature to dismiss the Secretary from the case at this time. The enactment of the 1980 amendment to 28 U.S.C. § 1331 has fundamentally altered the complexion of the case and we are unable to predict how the parties will adjust their positions on remand. It does appear from the plaintiff's brief in this court that the claim for damages was colored by an understanding of § 1331 that is no longer relevant. This change in the governing law, coupled with the confusion in the complaint regarding responsibility for the telephonic pretermination notice of November, 1978, see note 7 supra, suggests that the plaintiff may wish to amend her complaint at least to seek damages from the Secretary. We see no reason why such an amendment should not be permitted. As we have indicated, § 405(h) would not bar a claim for damages against the Secretary predicated on § 1331. And although respondeat superior generally does not apply in § 1983 and consequently in Bivens-type actions, see Monell v. Department of Social Services of City of New York, 436 U.S. 658, 691-95, 98 S.Ct. 2018, 2036-2038, 56 L.Ed.2d 611 (1978); Johnson v. Glick, 481 F.2d 1028, 1034 (2 Cir.), cert. denied, 414 U.S. 1033, 94 S.Ct. 462, 38 L.Ed.2d 324 (1973); Duchesne v. Sugarman, 566 F.2d 817, 830 (2 Cir. 1977), here it has been alleged that the Secretary had herself authorized telephonic pretermination practices that were inconsistent with due process. Such an amendment would appear to satisfy the requirements for "relation back" specified in F.R.Civ.P. 15(c). This decision to pretermit any ruling on the mootness of the claims against the Secretary is also influenced by the Secretary's lead role in the conduct of the litigation to date, and the likelihood that even if dismissed from the case, the Secretary would seek to intervene to protect her obvious interest in the outcome. See F.R.Civ.P. 24.
 
 In summary, we hold:
 
 56
 1) The district court now has jurisdiction over the claims against the state defendants under 28 U.S.C. § 1331;
 
 
 57
 2) The district court erred in holding that it lacked jurisdiction over the claims against the Secretary under 28 U.S.C. § 1361;
 
 
 58
 3) The case against the state defendants is not moot due to the claim for damages, and the complaint could be amended to include such a claim against the Secretary.
 
 
 59
 The judgment is therefore reversed and remanded for further proceedings consistent with this opinion. No costs.
 
 
 
 [1]
 Section 1331 as amended now reads:
 The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States.
 This reform was proposed by Professor Herbert Wechsler in 1948, see Federal Jurisdiction and the Revision of the Judicial Code, 13 Law & Contemp.Probs. 216, 225-26. It was also urged in the American Law Institute's Study of the Division of Jurisdiction between State and Federal Courts 24, 172-76 (1969), and by the writer of this opinion, Federal Jurisdiction: A General View 123-24 (1973). The first step was taken in 1976, when Congress amended § 1331(a) to eliminate the amount-in-controversy requirement in actions against the United States, federal agencies, and federal officers or employees. 90 Stat. 2721.
 
 
 [2]
 Plaintiff accordingly does not complain of the cessation of benefits that occurred from January through April of 1979, or the written notice of January, 1979 from the SSA announcing it. The telephone call of November, 1978, which initiated this series of events, is still in contention, however
 
 
 [3]
 This section as enacted read:
 The findings and decision of the Board after a hearing shall be binding upon all individuals who were parties to such hearing. No findings of fact or decision of the Board shall be reviewed by any person, tribunal, or governmental agency except as herein provided. No action against the United States, the Board, or any officer or employee thereof shall be brought under section 24 of the Judicial Code of the United States to recover on any claim arising under this title.
 Social Security Act Amendments of 1939, Pub.L.No.379, Title II, § 205(h), 53 Stat. 1371. At the time of enactment, § 24 of the Judicial Code, later codified as § 41 of Title 28, contained all the general grants of jurisdiction to the district courts. As a result of the revision of the Judicial Code in 1948, the initial reference in § 405(h) to "section 24 of the Judicial Code of the United States" now reads "section 1331 or 1346 of Title 28."
 
 
 [4]
 The sparse legislative history of §§ 405(g) and (h) supports this straightforward reading. In identical passages, the House and Senate Reports explaining § 405(g) observed:
 The present provisions of the Social Security Act do not specify what remedy, if any, is open to a claimant in the event his claim to benefits is denied by the Board.
 H.Rep.No.728, 76th Cong., 1st Sess. 43 (1939); S.Rep.No.734, 76th Cong., 1st Sess. 52 (1939). Both Reports merely paraphrase the language of § 405(h). See House Report, supra, at 43-44; Senate Report, supra.
 
 
 [5]
 The Court relied also on the Secretary's failure to challenge the allegations of exhaustion in the complaint, interpreting this "as a determination by him that for the purposes of this litigation the reconsideration determination is 'final' ". 422 U.S. at 767, 95 S.Ct. at 2467
 
 
 [6]
 The Court held that § 405(g) did not provide jurisdiction to review the Secretary's refusal to reopen, since that provision "limits judicial review ... to 'a final decision of the Secretary made after a hearing' ", 430 U.S. at 108, 97 S.Ct. at 985, and § 405(b) provides that petitions to reopen a prior decision may be denied without a hearing. In response to the plaintiff's argument that Salfi and Eldridge had dispensed with the requirement of a hearing, the Court read those cases as limited to instances in which constitutional issues were raised and a denial of § 405(g) jurisdiction would close "the federal forum to the adjudication of colorable constitutional claims." Id. at 109, 97 S.Ct. at 986
 
 
 [7]
 With respect to the telephonic pretermination notices the complaint is somewhat contradictory. Although the prayer for relief requests the court to enjoin all the defendants from enforcing the provision of the SSA's Manual authorizing such notices, and appears to ask for damages from the state defendants based on the November, 1978 telephone call as well as the written pretermination notices, the factual allegations indicate that the telephone call to Ellis was from an SSA and not a state employee. Presumably this discrepancy can be cleared up on remand
 
 
 [8]
 Section 421(a) of Title II provides that any determination of disability made by the state agency "shall be the determination of the Secretary for purposes of this subchapter". It might be argued that the effect of this provision is to impose the same limitations on judicial review of BDD's termination decisions as § 405(h) imposes on review of determinations made by the Secretary. Although not without appeal, the argument fails here because the "determination" of which § 421(a) speaks would seem to be the final decision of the state agency, and not the decision to send a pretermination notice. Moreover, an understanding of § 421(a) as automatically invoking §§ 405(g) and (h) would render superfluous § 421(d), which adds that any individual dissatisfied with the state agency's determination is entitled to a hearing by the Secretary "and to judicial review of the Secretary's final decision after such hearing as is provided in section 405(g) of this title."
 
 
 [9]
 Assuming that a different view were taken on the issue discussed in the two preceding paragraphs of this opinion, consideration would have to be given to an argument that if the state officials are deemed to be mere officers or employees of the Secretary so as to be within § 405(h), they are officers or employees of the United States or an agency thereof so as to come within the mandamus jurisdiction of 28 U.S.C. § 1361 discussed below
 
 
 [10]
 Even if we were to find jurisdiction under § 405(g), we might still be obliged to consider the possibility of mandamus jurisdiction, see infra, since § 405(g) would only furnish jurisdiction over those members of the alleged class who presented their claims to the Secretary. See Mathews v. Eldridge, supra, 424 U.S. at 328, 96 S.Ct. at 399
 
 
 [11]
 Section 1361 provides:
 The district courts shall have original jurisdiction of any action in the nature of mandamus to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff.
 
 
 [12]
 In Barnett, the court did not expressly mention § 405(h), but said:
 At the outset, we note that appellant argues that no jurisdiction exists for this action and that the class was improperly certified. While we do not think that these arguments are frivolous, the same contentions were rejected by our recent opinion in White v. Mathews, .... Finding no reason to reconsider those holdings here, we conclude that the district court had mandamus jurisdiction to hear this case ....
 580 F.2d at 31. Examination of the briefs indicates that the arguments referred to included the contention that § 405(h) barred the use of 28 U.S.C. § 1361.
 
 
 [13]
 This contrasts with the sharp criticism contained in both the House and Senate Reports of decisions giving a lax interpretation to the amount-in-controversy requirement of § 1331. See H.Rep.No. 94-1656, supra, at 16-17 & n.51, (1976) U.S.Code Cong. & Adm.News 6137, 6138 n.51; S.Rep.No. 94-996, supra, at 16 & n.51
 
 
 [14]
 This conclusion is fortified by the knowledge that when Congress desired to prohibit actions in the nature of mandamus to review decisions involving the dispensation of another type of federal disability benefit, it did so expressly. Prior to 1970, 38 U.S.C. § 211(a) provided that decisions of the Administrator of Veterans' Affairs concerning claims for benefits were final and conclusive and that "no other official or any court of the United States shall have power to review any such decision." 72 Stat. 1115. When federal courts gave a narrow interpretation to this section and exercised judicial review, Congress responded by amending the quoted language to read: "no other official or any court of the United States shall have power or jurisdiction to review any such decision by an action in the nature of mandamus or otherwise." 84 Stat. 790. See H.Rep.No. 91-1166, 91st Cong., 2d Sess. 8-11 (1970), (1970) U.S.Code Cong. & Adm.News 3723, 3729-31
 
 
 [15]
 We do not see any obstacle to jurisdiction in this case arising from the second sentence of § 405(h), which reads:
 No findings of fact or decision of the Secretary shall be reviewed by any person, tribunal, or governmental agency except as herein provided.
 In Weinberger v. Salfi, supra, 422 U.S. at 757-58, 95 S.Ct. at 2463, the Court interpreted this sentence as intended to assure that the procedures prescribed by § 405(g) were the exclusive means for reviewing decisions of the Secretary, including even non-final denials of claims for benefits, id. at 758 n.6, 95 S.Ct. at 2463. However, what we have here is an attack on procedures of the Secretary and of the state agency which operate prior to the time that any decision to deny or to approve a claim is reached. If § 405(h) addresses this situation at all, it does so in the third sentence and not in the second. Mindful that Salfi cautions us against reading any of the sentences of § 405(h) so broadly as to render another superfluous, we conclude that the bar articulated in the second sentence of § 405(h) does not apply to this case.
 Alternatively, were a decision to send a pretermination notice considered to be a denial of benefits sufficient to bring the review sought in this suit within the proscription of the second sentence of § 405(h), our doubts expressed above concerning the existence of § 405(g) jurisdiction would have to be reconsidered.
 
 
 [16]
 We are not persuaded by plaintiff's claim that her individual action is rescued from mootness under the doctrine of Southern Pacific Terminal Co. v. I.C.C., 219 U.S. 498, 515, 31 S.Ct. 279, 283, 55 L.Ed. 310 (1911), and its numerous progeny, see Frost v. Weinberger, supra, 515 F.2d at 62-63, and cases there cited, concerning issues the consideration of which "ought not to be, as they might be, defeated, by short term orders, capable of repetition, yet evading review ...." Although plaintiff sees the actions of BDD and SSA as a sinister series designed to prevent her claim from ever remaining denied long enough to permit her to obtain a judicial determination of the legality of the telephone warning and written pretermination notice, we regard this, in the absence of further proof, as ordinary bureaucratic backing and filling motivated primarily by a desire to protect plaintiff from hardship even when this was self-inflicted as a result of her unexplained cancellation of the psychological evaluation set for July 9, 1979. While plaintiff has not been guaranteed against ever having her disability reexamined, Ms. Hinckley's affidavit in support of the defendants' motion to dismiss avers that plaintiff's case will no longer be reviewed under the "Medical Reexamination Diary" procedures described in the affidavit and that unless the SSA received a report that plaintiff had returned to work or medically recovered, "which would be contrary to professional expectations under plaintiff's present diagnosis, plaintiff's file will not be diaried again for review, and her benefit payments will continue without interruption."
 Plaintiff also has consistently relied on her class-action allegations as an answer to the claim of mootness. We refrain from ruling on this because the district court has not yet granted or denied the motion for certification, and it would be inappropriate for us to do so in the first instance.
 
 
 [17]
 Title II of the Social Security Act contrasts with other benefits programs in that the funds are entirely of federal origin and the state agencies function solely as agents of the Secretary in making determinations of disability, applying federal law and federal regulations in accordance with procedures prescribed by her. Even accepting as true plaintiff's allegation that the state defendants have made a practice and policy of issuing deficient pretermination notices in violation of federal law, the authority under which this is done is nonetheless federal. The mere fact that the federal agents happen to be state officials does not, without more, convert every intentional deviation from the federal path into an action taken under color of state law. See Askew v. Bloemker, 548 F.2d 673, 676-77 (7 Cir. 1976)
 
 
 [18]
 We entertain no doubt that persons other than federal officials are subject to Bivens-type liability if an appropriate federal jurisdictional statute exists. See Turpin v. Mailet, 591 F.2d 426, 427 (2 Cir. 1978) (in banc, on remand from Supreme Court)